652 A.2d 162

RUTGERS CASUALTY INSURANCE COMPANY, PLAINTIFF–
RESPONDENT AND CROSS–APPELLANT, v. CHRIS VASSAS,
DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Argued November 7, 1994—Decided January 18, 1995.

164

*Steven L. Kessel* argued the cause for appellant and cross-respondent (*Drazin and Warshaw,* attorneys).

*Susan L. Moreinis* argued the cause for respondent and cross-appellant.

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal raises several questions concerning underinsured motorist (UIM) coverage. We consider whether an insured who receives an arbitration award from his tortfeasor, moves to confirm that award, enters judgment on that award, and issues a warrant of satisfaction of that judgment—all without notice to his UIM insurer—may subsequently assert a claim against his UIM carrier for UIM benefits. We also consider the procedure set forth in *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988), addressing the competing interests of insureds

and insurers, in respect of the insured's third-party claim, the insurer's subrogation rights, and the resolution of the UIM claim.

## I

On January 15, 1989, defendant Chris Vassas (Vassas) was involved in an automobile accident with a vehicle driven by Andre Vold (Vold or tortfeasor). Vold was insured under a policy issued by Allstate Insurance Co., providing the statutory minimum liability limits of $15,000/$30,000. Vassas was insured by plaintiff Rutgers Casualty Insurance Company (Rutgers), whose policy included an endorsement for UIM coverage in the amounts of $100,000/$300,000.

Shortly after their collision, Vassas filed suit against Vold for personal injuries sustained in the accident. Vassas's suit against Vold proceeded to mandatory arbitration pursuant to *Rule* 4:21A–1(a)(1). Vassas accepted the arbitration award of $15,000 plus interest, Vold's policy limit, and confirmed the award, as required by *Rule* 4:21A–6(b)(3). Judgment was entered on October 2, 1990, whereupon Vassas filed a warrant of satisfaction of that judgment on October 15, 1990, and received Vold's policy limit of $15,000.

On January 8, 1992, Vassas asserted, for the first time, a claim against Rutgers for UIM benefits. The claim letter makes reference to an earlier demand upon Rutgers for UIM coverage arising out of this accident, but no evidence of that asserted prior demand exists. Although soon after the accident Vassas did notify Rutgers of the collision damage to his car, he never notified it of his personal injuries, his suit against Vold, the arbitration award, his acceptance of that award, the entry of judgment, and the issuance of a warrant of satisfaction.

Rutgers immediately filed this suit for declaratory judgment to deny Vassas coverage. Rutgers argued that Vassas's confirmation of the arbitration award, entry of judgment, and issuance of the warrant of satisfaction destroyed its subrogation rights against the tortfeasor, Vold. The trial court, on cross-motions for summary judgment, granted Vassas's motion and denied Rutgers's motion.

The court dismissed Rutgers's complaint and ordered it to enter into arbitration with Vassas regarding his UIM claim. The court held that only the issuance of a general release, as opposed to a warrant of satisfaction of judgment, would destroy a UIM insurer's subrogation rights against the tortfeasor, and that the confirmation of an arbitration award does not preclude a UIM insurer from filing a subrogation claim against the tortfeasor.

Rutgers filed a motion for reconsideration under *Rule* 4:49–2, arguing that because Vassas delayed in seeking UIM benefits, the two-year statute of limitations on the underlying tort had already run, which prevented Rutgers from instituting action against the tortfeasor. The trial court denied Rutgers's motion, asserting that Rutgers had no excuse for its failure to make the statute-of-limitations argument earlier. Moreover, the trial court held that, in any event, the statute of limitations had not commenced running until the arbitrator had set the amount of the arbitration award.

Rutgers appealed to the Appellate Division, which reversed the Law Division in an unreported opinion. The appellate panel held that the motion to confirm an arbitration award, the entry of judgment, and the execution of the warrant of satisfaction in favor of the underinsured tortfeasor, Vold, had the same preclusive effect against the UIM insurer, Rutgers, as did the issuance of a general release. Because the Appellate Division reversed the trial court on this point, it declined to address Rutger's statute-of-limitations argument. Vassas moved for reconsideration, and the Appellate Division issued a supplemental opinion reaffirming its earlier determination.

Vassas filed a petition for certification to this Court, and Rutgers filed a cross-petition. We granted both petitions. 137 *N.J.* 165, 644 *A.*2d 613 (1994).

## II

In 1983, the Legislature, concerned that victims of automobile accidents were placed at risk not only by uninsured drivers but

also by underinsured drivers, introduced legislation providing for UIM coverage. The Legislature enacted *N.J.S.A.* 17:28–1.1(e)(1), which states, in part:

> A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds.

Although the Legislature made uninsured motorist (UM) coverage mandatory, it determined that insurers only need offer UIM coverage to each motorist; purchase of this additional protection is optional. The purchase of UIM coverage is "a matter of contractual agreement." *Longworth, supra,* 223 *N.J.Super.* at 178, 538 *A.2d* 414.

Vassas's insurance policy with Rutgers contained the following pertinent provisions:

> PART E—DUTIES AFTER AN ACCIDENT OR LOSS
>
> We [Rutgers] have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and any witnesses.
>
> B. A person seeking coverage must:
>
>    1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
>
>    2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
>
> . . . .
>
> C. A person seeking Uninsured Motorist Coverage must also:
>
>    . . . .
>
>    2. Promptly send us copies of the legal papers if a suit is brought.
>
> . . . .
>
> PART F—GENERAL PROVISIONS
>
> OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

■ Vassas was under a contractual duty to notify Rutgers promptly of how, when, and where the accident had occurred. He had a duty to cooperate with Rutgers in defense or prosecution of any action by or against the tortfeasor. Vassas was further required to forward to Rutgers any "legal papers" filed or received in connection with any litigation arising from the accident. Finally, he was under an obligation to preserve and not prejudice Rutgers's rights to recover any payments made under the policy in a subrogation action. Nevertheless, Vassas did not inform Rutgers of his personal-injury suit against Vold, the arbitration award, his acceptance of the award, the reduction of the award to judgment, and his execution of the warrant of satisfaction to Vold, until January 8, 1992, when he filed his demand for UIM coverage. That date was approximately three years after the accident had occurred and fifteen months after the trial court had entered judgment based on the arbitration award. His delay in reporting those events constituted a breach of the duties imposed by the insurance contract.

More important, Vassas did not advise Rutgers of any of the aforementioned acts until three years after his accident. Rutgers claims that Vassas's failure to advise it of his personal-injury claim against Vold until three years after the accident bars any subrogation claim against Vold under the two-year statute of limitations for personal injuries, N.J.S.A. 2A:14-2.

■ The limitations period for a subrogation action begins to run at the same time as the limitations period for the underlying action:

As the right of subrogation turns on the obligation or duty that the third party itself owes the subrogor, subrogation is wholly dependent on the merits of the subrogor's claim against the third party. The subrogee, which succeeds to the position of the subrogor, may recover only if the subrogor likewise could have

recovered; the subrogee gains no additional rights and is subject to all defenses that were available against the subrogor. Courts therefore have generally recognized that the cause of action for subrogor and subrogee accrues at the same time.

[*Holloway v. State*, 125 *N.J.* 386, 396, 593 *A.2d* 716 (1991) (citations omitted).]

*See also* Craig & Pomeroy, *New Jersey Auto Insurance Law*, § 25:3, at 293–94, § 28:3, at 328–33 (1994) (discussing subrogation principles under both UM and UIM policies); *Unsatisfied Claim & Judgment Fund v. Gonzalez*, 227 *N.J.Super.* 609, 548 *A.2d* 240 (Law Div.1988) (holding that two-year statute-of-limitations period under *N.J.S.A.* 2A:14–2 for UCJF's subrogation action to recover judgment entered against UCJF after automobile accident commenced running at time of accident rather than when UCJF agreed to entry of judgment against itself); *Glass v. Spaits*, 221 *N.J.Super.* 643, 535 *A.2d* 561 (Law Div.1987) (holding that two-year statute-of-limitations period under *N.J.S.A.* 2A:14–2 for workers' compensation insurer's subrogation action commenced running at time of injury rather than at time insurer paid benefits to claimant).

■ Since the causes of action for subrogor and subrogee accrue at the same time, Rutgers's cause of action against Vold accrued at the same time that Vassas's cause of action against Vold accrued: the time of the accident. That accident occurred on January 15, 1989. Pursuant to *N.J.S.A.* 2A:14–2, the two-year limitations period for any suit against Vold, including a subrogation claim by Rutgers, expired on January 15, 1991. Rutgers, therefore, cannot file suit against Vold for any UIM benefits that it might pay to Vassas.

Vassas knew at the time of his suit against Vold, or shortly thereafter, that the claim for his injuries would exceed Vold's coverage. Yet he waited nearly three years, without offering any justification or excuse, to inform his UIM carrier of his personal-injury suit and award against Vold. By so doing, Vassas unfairly prejudiced Rutgers's subrogation right against Vold, contrary to the requirements of his insurance policy. Vassas's failure to comply with those contractual provisions are sufficient to bar his UIM claim against Rutgers.

## III

Nevertheless, we take this opportunity to address some of the difficulties that continue to arise with regard to the subrogation rights of a UIM carrier and the statutory requirement that a "motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments." *N.J.S.A.* 17:28–1.1(e)(1).

■ We essentially adopt the procedure set forth in *Longworth, supra,* 223 *N.J.Super.* 174, 538 *A.*2d 414. In *Longworth,* Judge Pressler, in a detailed and well-reasoned analysis, reviewed and examined the then-existent state of the law with respect to UIM coverage and the obligations placed upon insurers and insureds by insurance contracts and the New Jersey auto-insurance scheme. The court concluded that the subrogation and consent-to-settle clauses of then-typical insurance contracts violated public policy because they impeded the Legislature's policy in providing for UIM coverage and because they impermissibly interfered with an insured's right to manage his or her litigation. *Id.* at 185, 538 *A.*2d 414.

The difficulty presented in *Longworth* was that the insurance contract's exhaustion, subrogation, and consent-to-settle clauses thrust insured victims of auto accidents into a contractual impasse that frustrated the intent and policy of the Legislature in authorizing UIM coverage. 223 *N.J.Super.* at 184, 538 *A.*2d 414. Exhaustion clauses required an insured to exhaust the tortfeasor's insurance limits before making a claim on his own UIM carrier. *Id.* at 182, 538 *A.*2d 414. For an insured whose damages exceeded his tortfeasor's insurance coverage, exhaustion could most expeditiously be achieved by settling with the tortfeasor for, or close to, the policy limits. *Id.* at 183, 538 *A.*2d 414. However, the tortfeasor's insurer would usually settle only upon the execution of a general release of liability. *Id.* at 184, 538 *A.*2d 414. Yet under the insured's UIM policy, the insured could not execute a general

release without violating the subrogation rights of the UIM carrier. *Ibid.* "Consequently, the victim cannot simultaneously give a release to the tortfeasor and protect his UIM insurer's right to subrogation." *Ibid.*

The panel in *Longworth* found that the consent-to-settle and subrogation clauses combined to violate public policy. 223 *N.J.Super.* at 185, 538 *A.*2d 414. Relying on the Minnesota Supreme Court's decision in *Schmidt v. Clothier*, 338 *N.W.*2d 256 (1983), the Appellate Division suggested a procedure for insureds and insurers to follow when making UIM claims that would both serve the Legislature's "purpose of providing maximum and expeditious protection to the innocent victims of financially irresponsible motorists," and protect the subrogation rights of insurers. The court observed:

> [A]s a matter of future conduct, an insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by the insured of the claim against the tortfeasor. While promptness is to be ultimately decided by the circumstances, 30 days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date. In any event, an insured who has not received a response from his carrier and who is in doubt as to whether acceptance of the tortfeasor's offer will impair his UIM rights may seek an immediate declaratory ruling from the trial court on order to show cause on such notice as is consistent with the circumstances. We further hold that UIM carriers may, if they choose, honor demands from their insureds to proceed to arbitration of the UIM claim prior to disposition of the claim against the tortfeasor.
>
> [*Longworth, supra,* 223 *N.J.Super.* at 194–95, 538 *A.*2d 414].

We think that that procedure reflects a fair balance between the competing interests of the parties involved.

Under the auto-arbitration statute, *N.J.S.A.* 39:6A–24 to – 35, and *Rule* 4:21A, either party has thirty days within which to reject the arbitration award, after which either party may move to confirm it, binding the other party, up to fifty days after the award is made; beyond fifty days, the court may dismiss the action. This period comports with that suggested by the Appellate Division in *Longworth.* 223 *N.J.Super.* at 194, 538 *A.*2d 414. Vassas argues that that thirty-day notice requirement imposes an unfair burden on insureds, requiring them to notify their insurers

of an arbitration award on the very same day they receive it. While we fail to perceive any injustice in that requirement, as a simple photocopy of the award letter would be sufficient to notify the insurer of the award, we are cognizant that that time constraint may make more difficult the parties' determination of what course of action to pursue. Particularly burdened are insurers, who must determine whether to offer their insureds the arbitrator's award (which usually equals the tortfeasor's policy limit) in exchange for the insured's subrogation right against the tortfeasor. Depending upon the complexity of the case and the caseload of the insurer, thirty days may be a constrictive time period.

We note, however, that *Longworth* merely established thirty days as a "presumptive time period" for notifying a UIM insurer of a settlement offer, noting that "promptness is to be ultimately determined by the circumstances." *Ibid.* Although the thirty-day time period for rejection of the arbitration award and demanding a trial *de novo* is statutorily mandated, it "is not jurisdictional" and may be extended by the court in "extraordinary circumstances." *Mazakas v. Wray,* 205 *N.J.Super.* 367, 370–71, 500 *A.*2d 1085 (App.Div.1985); *see Sprowl v. Kitselman,* 267 *N.J.Super.* 602, 632 *A.*2d 540 (App.Div.1993) (approving easier standard for relaxation of fifty-day limit for confirmation of arbitration award, to avoid dismissal); *Gerzsenyi v. Richardson,* 211 *N.J.Super.* 213, 511 *A.*2d 699 (App.Div.1986) (filing of motion for trial *de novo* one business day late constituted "extraordinary circumstances" justifying relaxation of thirty-day limit); *DeRosa v. Donohue,* 212 *N.J.Super.* 698, 515 *A.*2d 1309 (Law Div.1986) (holding that notice mailed six days prior to expiration of thirty-day period but which arrived two days after period expired due to postal delay constituted "extraordinary circumstances" for relaxing time limit).

Extraordinary circumstances can include a showing of the unusual complexity of the case, with extensions guided by the same principles relied upon in granting relief from an order or judgment under *Rule* 4:50–1. *Mazakas, supra,* 205 *N.J.Super.* at 372,

500 *A*.2d 1085. To comply with both the letter and spirit of the arbitration statute and the court rules promulgated in conformity thereto, we emphasize, however, that a trial court should sparingly exercise its power to grant any such time extensions. *Ibid.* We expect that cases requiring deviation from the time limits would be rare. Moreover, requiring insured victims to advise their UIM carriers promptly of their personal-injury suits will ameliorate considerably the time constraints imposed by *Longworth.*

## IV

As stated, we essentially endorse the *Longworth* procedure, and take note of its implementation by the insurance bar:

That the *Longworth* approach preserves everyone's best interests in the UIM context has been amply demonstrated by experience. The injured accident victim is afforded reasonably prompt means of obtaining full recovery. The liability insurer for the tortfeasor is afforded at least the opportunity to obtain for its insured a general release, thereby disposing of the claims against its insured in accordance with its good faith responsibilities in that regard. Finally, the UIM insurer is given the ability to exercise its subrogation rights in those situations where a subrogation action against the tortfeasor for reimbursement of UIM payments appears worth pursuing.

Thus, since the *Longworth* decision was first published in March of 1988, the approach it suggests has been followed almost universally by the bar and insurance industry.

[Craig & Pomeroy, *supra*, § 28:3, at 332].

■ Accordingly, when an insured under an automobile insurance policy providing UIM benefits is involved in an accident and undertakes legal action against the tortfeasor, *the insured must notify the UIM insurer of that action.* If, during the pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then *the insured should again notify the UIM insurer* of that fact.

■ If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit,

in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with *Longworth, supra,* move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor.

The *Longworth* procedure balances the interests of insureds and insurers, injured victims and tortfeasors. It provides the insured victim an opportunity both to assert liability against the tortfeasor and to determine the liability of the UIM insurer. In addition, it apprises the UIM insurer of pending litigation by one of its insureds, which may obligate it to provide UIM coverage under the insured's policy.

## V

Vassas was injured in an automobile accident with Vold on January 15, 1989. Vassas filed suit against Vold for his personal injuries. In violation of the explicit requirement in his insurance policy, Vassas did not notify his insurer of the lawsuit. When Vassas was awarded damages from the mandatory auto-arbitration proceeding, he again failed to notify his insurer, contrary to the Appellate Division's holding in *Longworth, supra,* requiring such notification. Vassas waited almost three years before seeking UIM coverage, and thereby breached his contract and prejudiced Rutgers's subrogation rights, which expired with the running of the two year statute of limitations applicable to the

underlying tort. Under those circumstances, Vassas's failure to comply with the provisions of his insurance contract and the dictates of *Longworth* bars his action to recover UIM benefits from Rutgers.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed* —None.