694 A.2d 324

MERCEDES D. WALSH, PLAINTIFF, v. STATE
FARM INSURANCE CO., DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided February 24, 1997.

*Leonidas P. Doumas,* for plaintiff.

*Donna T. Miller,* for defendant (*Melli & Wright,* attorneys).

D'ITALIA, A.J.S.C.

This case raises a series of novel questions related to underinsured motorist coverage (hereinafter "UIM"). On December 2, 1996, counsel agreed to submit this matter for decision based upon a Stipulation of Facts and Joint Exhibits. The court has reviewed the stipulation of facts and joint exhibits and makes the following findings.

On September 14, 1989, plaintiff Mercedes D. Walsh was a passenger in a motor vehicle owned and operated by her husband, Charles Walsh, Sr. According to the stipulation, plaintiff's host vehicle swerved into a concrete median on the New Jersey Turnpike, bounced back across two traffic lanes and collided with a bus. As a result of the accident, plaintiff sustained multiple injuries. She filed suit against her husband, the bus company, and its driver.

Charles Walsh, Sr. was insured by State Farm. His liability insurance policy limit of $15,000 was offered to plaintiff and was paid into court. Following mandatory, non-binding arbitration, plaintiff and the attorney for Charles Walsh, Sr. filed for trial *de novo.* Thereafter, plaintiff accepted the $15,000 policy of Charles Walsh, Sr. and an offer of $17,500 from the co-defendant bus owner and operator. Plaintiff executed releases on March 31, 1992.

Plaintiff's son, Kevin K. Walsh, resided with plaintiff at the time of the accident. Kevin Walsh also had a policy with State Farm.

His policy provided UIM coverage with a limit of $100,000 per person. By letter dated June 11, 1992, more than two months after the releases in favor of all tortfeasors had been signed, plaintiff's attorney wrote to State Farm asserting a UIM claim under the policy issued to Kevin Walsh. State Farm denied coverage and this action ensued.

■ Plaintiff concedes that she failed to comply with certain claim requirements of the Kevin Walsh policy. The UM/UIM endorsement provides that there is no coverage for any insured who "without our written consent settles with the owner or operator of an * * * underinsured motor vehicle who may be liable for the bodily injury * * * and hurts our right to recover from such person or organization." The same endorsement provides that there is no coverage for any insured who "without prior written notice to us, settles with any other person or organization who may be liable for the bodily injury". Plaintiff did not obtain State Farm's written consent to settle her claim against Charles Walsh, an underinsured motorist. Nor did plaintiff give State Farm written notice of her intention to settle with the bus company and its operator.

Plaintiff asserts that State Farm had actual knowledge of all salient facts and consented orally to the settlements which resulted in plaintiff tendering releases to all tortfeasors. In that regard, plaintiff relies upon the certification of her attorney, one of the joint exhibits, in which counsel states that on October 15, 1990, plaintiff was awarded $50,000 by the arbitrator, who assessed 25% of the liability against the bus company and its driver. The certification further provides:

> This result was also discussed with the bodily injury adjusters and it was agreed that a Trial De Novo application would be filed in order to be able to obtain additional funds from the co-defendant, with the understanding, of course, that any amounts received from said co-defendant would be credited to State Farm in connection with the underinsured claim that was to be made under the Kevin Walsh policy. Kevin Walsh is the son of Mercedes and Charles Walsh and resided with his parents in Bayonne, New Jersey at the time of the accident and was also insured by State Farm, all of which information was made known to the various adjusters.

Counsel also certifies that he was "requested" to submit a claim under the UIM provisions of the Kevin Walsh policy subsequent to execution of the releases on March 31, 1992.

State Farm cannot directly refute the assertion that it was on actual notice of an impending UIM claim against the Kevin Walsh policy at the time the actions against the tortfeasors were settled. State Farm's bodily injury file cannot be located and the adjusters on that file have no independent recollection of any of the matters in issue. State Farm did not open a UIM claim file until its receipt of plaintiff's June 11, 1992 letter.

Defendant argues that plaintiff's complaint must be dismissed for failure to comply with the procedures set forth in *Longworth v. VanHouten*, 223 *N.J.Super.* 174, 538 *A.2d* 414 (App.Div.1988), approved by the Supreme Court in *Rutgers Cas. Ins. Co. v. Vassas*, 139 *N.J.* 163, 652 *A.2d* 162 (1995). Plaintiff contends that oral notice to the State Farm bodily injury adjusters handling the claim against Charles Walsh, Sr. constitutes substantial compliance with the *Longworth* procedures. This court holds that, where an insurer offers the liability policy limits of its insured in exchange for a complete release from the injured party, the injured party need not first obtain written consent to accept the settlement offer from another department of the same insurer in order to preserve a UIM claim under another policy issued by that insurer.

*Longworth* established procedures governing an insured's claim for UIM benefits where the insured also files suit against the tortfeasor. In such cases, the insured must notify the UIM carrier of the fact that an action against the tortfeasor has been instituted. If, during the pendency of the action, the tortfeasor's insurance proves insufficient to satisfy the insured's damages, then the insured should again notify the UIM insurer of that fact. If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim because the tortfeasor is underinsured, the UIM insurer has the option of paying the insured the amount of the tortfeasor's settlement offer or the

arbitration award in exchange for subrogation of the insured's rights against the tortfeasor. In the alternative, the UIM insurer may allow the insured to settle.

The requirement that the UIM carrier be given the option of exercising its subrogation rights against the tortfeasor is anomalous where the UIM carrier and the liability carrier are the same. The offer to settle the tort claim for the full amount of a liability policy is an exercise by the insurer of its good faith obligation to make an effort to protect the insured from the prospect of an excess judgment. In *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 496, 323 *A.*2d 495 (1974), the Supreme Court held that an insurer, "having contractually restricted the independent negotiating power of its insured, has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage." The State Farm policy issued to Charles Walsh provides that only the insurer has "the right to investigate, negotiate and settle any claim or suit." The policy also provides that the insured shall not make any payment or assume any obligation to others, except at his or her own cost. Thus, State Farm was under a *Rova Farms* burden to attempt to negotiate a settlement within the policy coverage or risk being liable for the difference between its policy limit and the amount of an excess judgment. *See Lang v. Baker*, 101 *N.J.* 147, 157, 501 *A.*2d 153 (1985). Having determined that its fiduciary obligation to Charles Walsh required settlement within the policy limits, State Farm could not, in its role as provider of UIM benefits to plaintiff under the Kevin Walsh policy, withhold its consent to the same settlement. Since State Farm could not take inconsistent positions, it was not necessary for plaintiff to obtain State Farm's written consent to the settlement in order to preserve her UIM claim.

As previously noted, plaintiff did not provide prior written notice to State Farm of its intention to settle with the bus company as required by the UIM endorsement to the Kevin Walsh policy. The certification by plaintiff's attorney states only

that, after filing for a trial *de novo,* he received an offer from the co-defendant of $17,500. According to the certification, "this information was made known to the defendant (presumably State Farm) which was pleased with the result."

Where a policy requires a writing, verbal notice will not ordinarily suffice. *Miller v. Zurich Gen. Accident & Liability Ins. Co.,* 36 *N.J.Super.* 288, 296, 115 *A.*2d 597 (App.Div.1955). However, that does not end the analysis. Defendant must demonstrate some prejudice flowing from the lack of notice. Moreover, the burden of persuasion on the issue of prejudice is on the carrier. *See Cooper v. Government Employees Ins. Co.,* 51 *N.J.* 86, 94, 237 *A.*2d 870 (1968); *Casey v. Selected Risks Ins. Co.,* 176 *N.J.Super.* 22, 29, 422 *A.*2d 83 (App.Div.1980). There are also circumstances where an insurer may be equitably estopped from denying coverage, as where the insurer, by its conduct, leads the insured reasonably to believe that the claim has been adequately presented, thereby lulling the insured into inaction. *See Highway Trailer Co. v. Donna Motor Lines, Inc.,* 46 *N.J.* 442, 449, 217 *A.*2d 617 (1966), *cert. denied,* 385 *U.S.* 834, 87 *S.Ct.* 77, 17 *L.Ed.*2d 68 (1966). In this case, defendant has failed to introduce any evidence of prejudice and, indeed, has not made any claim of prejudice.

Accordingly, plaintiff is entitled to arbitration of her UIM claim. Her available UIM limits under the Kevin Walsh policy are greater than the liability policy limits of Charles Walsh and the total amount she received by way of the two settlements is less than her UIM limits. The task of the arbitrators will be to determine plaintiff's full damages and the percentage of liability of both alleged tortfeasors. If the amount plaintiff received by way of the two settlements equals or exceeds the total damages, there will be no recovery under the UIM endorsement. If the amount received in settlement is less than the total damages, the arbitrators will be obliged to determine the extent to which each tortfeasor's liability policy was "available" to plaintiff. "This is done by calculating the extent to which each tortfeasor's liability carrier

would have been required to respond in damages based upon the assessment of the claimant's total damages, and the extent of each tortfeasor's responsibility therefore, as set forth under the Comparative Negligence Act *N.J.S.A.* 2A:15–5.3." *Arenson v. American Reliance Ins.*, 284 *N.J.Super.* 337, 345, 665 *A.*2d 394 (Law Div.1994). State Farm will receive credit for the amount that plaintiff could have received from each tortfeasor's carrier, or did receive, whichever is greater.

Earlier in this action, defendant moved for summary judgment declaring the UIM benefits of the Kevin Walsh policy unavailable to plaintiff. By order dated October 28, 1996, the motion was denied. In his letter opinion, Judge Seymour Margulies wrote:

> The defendant now asserts that *Aubrey v. Harleysville Ins. Cos.*, 140 *N.J.* 397, 658 *A.*2d 1246 (1995) bars her claim to the son's UIM benefits because of the existence of the $15,000 limit in the husband's policy.
>
> *Aubrey* is no bar. It makes clear that the right to recover UIM benefits is personal to the insured and coverage is linked to the injured person not the covered vehicle.

Judge Margulies concluded that plaintiff is covered under both household policies—that of her son and that of husband. Both paid premiums. Plaintiff made no election of coverage. In Judge Margulies' opinion, "Her husband's action in buying a limited UIM policy does not bind her."

The parties have devoted argument to whether or not the ruling by Judge Margulies constitutes the law of the case. It is not necessary to resolve that question. I am satisfied independently that *Aubrey* is not a bar to plaintiff's claim for UIM coverage.

*N.J.S.A.* 17:28–1.1 prescribes the UIM coverage which an automobile liability insurer is required to offer. An insurance company is free to offer broader UIM coverage than that which is statutorily mandated. At bottom, the extent of coverage is a matter of contract. *Aubrey* dealt with a policy different than that issued by State Farm to Kevin Walsh. The Kevin Walsh policy also differs substantially from the policy at issue in *Landi v. Gray*, 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988), disapproved by the Supreme Court in *Aubrey*.

In this case, plaintiff was the beneficiary of two policies by virtue of the coverage language authored by State Farm. The explicit policy language extends UIM protection to "relatives". Plaintiff had an option, therefore, to elect the policy with superior UIM coverage. *See Prudential Property and Casualty Ins. Co. v. Travelers Ins. Co.*, 264 *N.J.Super.* 251, 260, 624 *A.*2d 600 (App.Div. 1993) holding that the expectation of an insured who purchases a policy of insurance containing UIM coverage, is that the protection extends to himself "and anyone else who is insured on the same basis under the policy."

The parties have stipulated that Donna Walsh, plaintiff's daughter, also resided in the household and had available UIM coverage up to $100,000 with New Jersey Manufacturers. There is no evidence in the record that New Jersey Manufacturers was ever put on notice of any potential UIM claim.

■ The Kevin Walsh policy specifically deals with the existence of other UIM coverage:

IF THERE IS OTHER COVERAGE

1. If the insured sustains bodily injury and other uninsured and underinsured motorist coverage applies:

 a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

 b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all uninsured and underinsured motorist coverage applicable to the accident.

*N.J.S.A.* 17:28–1.1(c) provides that:

Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured. If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.

Although this statute provides for *pro rata* sharing among applicable policies in the case of uninsured motorist coverage, it is silent with respect to multiple available UIM policies. Nonetheless, given the statute's explicit prohibition against stacking either

UM or UIM coverages, there is no reason to differentiate between them for the purpose of prorating where multiple policies are available. The statute does not prevent an insurer from including a sharing provision such as that included by State Farm in this case. Accordingly, State Farm shall be liable for only its *pro rata* share, or 50% of any arbitration award.