706 A.2d 776

ALBERT KOR, PLAINTIFF–APPELLANT, v. NATIONAL CONSUMERS INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1997—Decided March 5, 1998.

Before Judges MUIR, Jr., CUFF and STEINBERG.

*Gregg A. Wisotsky*, argued the cause for appellant (*Feinman & Chapman*, attorneys; *Laura M. Le Winn*, on the brief).

*Jerald J. Howarth*, argued the cause for respondent (*Hahn & Howarth*, attorneys; *Mr. Howarth*, on the brief).

The opinion of the court was delivered by

STEINBERG, J.S.C. (temporarily assigned).

This appeal requires us to consider the holding in *Longworth v. Van Houten*, 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988), in circumstances where the underinsured motorist (UIM) insurer and the tortfeasor's liability insurer are the same carrier. Plaintiff settled his personal injury claim against the tortfeasor. Defendant then denied plaintiff's UIM arbitration claim on grounds plaintiff failed to protect its subrogation rights against the tortfeasor. Plaintiff filed this action against defendant seeking UIM benefits, personal injury protection benefits, and other ancillary relief.

When plaintiff filed a motion for summary judgment, the motion judge concluded plaintiff's noncompliance with the requisites of *Longworth* required denial of plaintiff's motion. The judge held plaintiff's failure to give timely notice that the statute of limitations was about to expire, coupled with the failure to either file an action against the tortfeasor or to advise defendant a suit had not been filed, prejudiced defendant in its ability to pursue a subrogation claim against the tortfeasor. The judge did so even though plaintiff, prior to submission of a *"Longworth"* letter, had negotiated a settlement of his claim against the tortfeasor with a liability claims adjuster of defendant. Subsequent to the denial of the summary judgment, the parties consented to a dismissal of the complaint. Plaintiff appeals the denial of summary judgment. We reverse.

On March 10, 1994, plaintiff sustained injuries when the automobile he was driving was struck by the vehicle driven by the tortfeasor. Defendant provided automobile liability insurance to both plaintiff and the tortfeasor.

Plaintiff did not file suit against the tortfeasor prior to commencing negotiations with the adjuster. On or about February 28, 1996, twelve days before expiration of the statute of limitations, the parties settled the claim against the tortfeasor for the tortfeasor's policy limits subject to a *"Longworth"* letter. Plaintiff then sent the letter. Defendant rejected plaintiff's UIM claim on grounds it had been prejudiced by the failure of the plaintiff to protect defendant's subrogation claim against the tortfeasor due to plaintiff's failure to file suit against the tortfeasor prior to the running of the statute of limitations. Plaintiff then filed this action.

In support of his motion for summary judgment, plaintiff furnished a certification of Kenneth Lucianin, a legal assistant employed by plaintiff's attorney. According to Mr. Lucianin, he sent a letter to defendant's liability adjuster, Eunice Wynn, on February 23, 1996, advising her of plaintiff's claim, enclosing plaintiff's "medical package", and calling to her attention a February 16,

1996, telephone conversation. During this conversation, Mr. Luci-anin advised Ms. Wynn that the statute of limitations was running and that plaintiff wanted to settle as quickly as possible, especially since plaintiff's injuries were in excess of the tortfeasor's policy limits. At this time, Ms. Wynn agreed that the case would likely settle and said that plaintiff should not file suit.

The February 23, 1996 letter, also stated, in bold print, that the statute of limitations "will be running on March 10, 1994." Obviously this was a misprint, as the caption of the letter correctly set forth the accident date as March 10, 1994. Finally, Mr. Lucianin asked that defendant set up an underinsured motorist claim file. Mr. Lucianin contended that he sent the February 23, 1996 letter to defendant through Lawyers Service. He attached a receipt to his affidavit indicating that the letter was received by defendant on February 26, 1996.

Subsequently, Mr. Lucianin had a telephone conversation with Ms. Wynn on February 28, 1996, during which she offered the tortfeasor's policy limits of $15,000 and asked that plaintiff not file suit against the tortfeasor. She also asked that Mr. Lucianin send a *"Longworth"* letter to the attention of Tanya McKinny, the personal injury protection benefits adjuster handling plaintiff's claim. Mr. Lucianin sent this letter.

Mr. Lucianin also spoke with Ms. McKinny on February 28, 1996, and said that he would be sending her a *"Longworth"* letter by facsimile transmission and Lawyers Service that day. He advised her that time was of the essence. The *Longworth* letter correctly set forth March 10, 1994, in the caption, as the date of the accident, thereby formally advising Ms. McKinny that the statute of limitations was about to expire. The *Longworth* letter also advised Ms. McKinny that plaintiff intended to accept the $15,000 policy limits in exchange for providing the tortfeasor with a general release. Additionally, the letter asked Ms. McKinny, on behalf of defendant, for guidance as to how to proceed. That is, plaintiff inquired as to whether defendant would either instruct him not to issue a general release and pay the tortfeasor's policy

limits to plaintiff in return for an assignment of plaintiff's claim, or settle his UIM claim, or proceed to arbitration. In the alternative, plaintiff asked that defendant permit settlement to take place if defendant did not wish to pursue subrogation.

The February 29, 1996 letter asked Ms. McKinny to respond within thirty days. The statute of limitations expired prior to the end of the thirty-day time period *Longworth* recommended. Mr. Lucianin telecopied the letter to Tanya McKinny on February 29, 1996, and attached to his certification a facsimile transmittal sheet indicating transmission of the letter on that date. In addition, he attached a receipt from Lawyers Service indicating that the letter addressed to Tanya McKinny was received by defendant on March 4, 1996, six days prior to the expiration of the statute of limitations. Significantly, the letters to Ms. Wynn and Ms. McKinny were both sent to the same office address.

In opposition to the motion, defendant furnished the certification of Ms. Wynn who stated that when she received the "medical specials" on behalf of plaintiff on February 29, 1996, she extended authority to settle the claim against the tortfeasor, "subject to a one (1) month notice period to enable plaintiff to pursue UIM and the release would then come." Obviously, Ms. Wynn was aware of the fact that a "one month notice" extended beyond the statute of limitations.

Defendant also supplied a certification of Kerry Cecil, who stated that she was the UIM adjuster and that her office received a notice seeking UIM benefits from plaintiff on March 5, 1996. This was five days prior to the running of the statute of limitations. The carrier took no immediate action and waited until March 18, 1996, to assign the file to Ms. Cecil. This was eight days after the statute of limitations had run. On March 27, 1996, she forwarded a letter to plaintiff's attorney denying UIM benefits on the grounds previously noted.

The motion judge denied plaintiff's motion for summary judgment because plaintiff prejudiced defendant's right of subrogation in violation of the subrogation clause of the policy. The judge

based this decision upon the fact that neither the letter of February 23, 1996, nor the letter of February 29, 1996, stated that the statute of limitations was about to run and that suit had not been filed. In addition, the judge was persuaded by the fact that the most effective manner in which to preserve defendant's subrogation rights would have been to file suit. Accordingly, the motion for summary judgment was denied and the subsequent consent order was entered *nunc pro tunc,* dismissing plaintiff's complaint.

The purpose of UIM protection is to provide "maximum and expeditious protection to the innocent victims of financially irresponsible motorists." *Longworth, supra,* 223 *N.J.Super.* at 184, 538 *A.*2d 414 (footnote omitted). A strict construction of the language of an insurance policy may frustrate the intent of the Legislature in authorizing UIM coverage. The policy may contain an exhaustion clause that requires the insured to exhaust the policy limits of the tortfeasor prior to asserting a UIM claim. This frustrates an injured party, particularly one whose damages are in excess of the policy limits, in seeking an expeditious resolution of the claim. *Longworth, supra,* 223 *N.J.Super.* at 183, 538 *A.*2d 414. In addition, an insurance carrier owes a duty to its own insured to provide the protection of a general release as a condition of settlement. Therefore, an injured party such as plaintiff will not be able to settle with an underinsured tortfeasor unless he is also willing to give a general release. A general release prejudices the UIM carrier's right of subrogation. *Id.* at 183–84, 538 *A.*2d 414. As a result, the injured party cannot settle his claim without jeopardizing his right to recover under the UIM provisions of his policy. *Ibid.*

The dilemma confronting an injured party seeking to assert a UIM claim in the ordinary circumstance where the UIM carrier and the liability carrier are different was resolved in *Longworth, supra,* and *Rutgers Cas. Ins. Co. v. Vassas,* 139 *N.J.* 163, 652 *A.*2d 162 (1995). In *Rutgers Casualty,* the Court said:

Accordingly, when an insured under an automobile insurance policy providing UIM benefits is involved in an accident and undertakes legal action against the tortfeasor, the insured must notify the UIM insurer of that action. If, during the

pendency of the claim, the tortfeasor's insurance coverage proves insufficient to satisfy the insured's damages, then the insured should again notify the UIM insurer of that fact.

If the insured receives a settlement offer or arbitration award that does not completely satisfy the claim, because the tortfeasor is underinsured, the UIM insurer then has two options: offer to pay the insured the amount of the tortfeasor's settlement offer or the arbitration award, usually the tortfeasor's policy limit, in exchange for subrogation of the insured's rights against the tortfeasor; or, allow the insured to settle. In either case, the UIM insurer must further allow the insured the benefit of the UIM coverage. If the insurer does not respond within the time allotted for rejection of the award or settlement offer, the insured victim may, consistent with *Longworth, supra,* move for a declaratory ruling on order to show cause concerning the parties' rights and responsibilities. In this manner, the insured victim is afforded the protection and benefits of the tortfeasor's insurance coverage in addition to the insured's own UIM coverage. As well, the UIM carrier is able to weigh the relative merits of allowing its insured to settle and paying the difference in UIM benefits compared with paying its insured the settlement offer plus UIM benefits and itself maintaining a subrogation action against the tortfeasor.

The *Longworth* procedure balances the interests of insureds and insurers, injured victims and tortfeasors. It provides the insured victim an opportunity both to assert liability against the tortfeasor and to determine the liability of the UIM insurer. In addition, it apprises the UIM insurer of pending litigation by one of its insureds, which may obligate it to provide UIM coverage under the insured's policy.

[139 *N.J.* at 174–75, 652 *A.*2d 162 (emphasis omitted).]

Defendant contends that plaintiff's belated *Longworth* letter entitled it to deny the UIM claim. In doing so it essentially argues the thirty-day time period prescribed by *Longworth* is immutable. We rejected a similar contention in *Breitenbach v. Motor Club Ins. Co.,* 295 *N.J.Super.* 328, 685 *A.*2d 36 (App.Div. 1996). There, the UIM carrier failed to respond in writing within thirty days of the insured's notice of intention to settle with the tortfeasor for the policy limits. The notice also provided that unless the insured was advised to the contrary within thirty days, he would assume that there was no objection to the settlement. When the UIM carrier failed to respond, the insured settled. We rejected the carrier's contention that it was entitled to an irrebuttable presumption of prejudice whenever the insured settles with a tortfeasor, without the carrier's express written consent, if that settlement occurs within thirty days of the notice.

We said:

Even accepting a settlement within the thirty day period, in the absence of a declaratory judgment action, however, does not per se constitute prejudice to the UIM carrier. By not waiting the thirty day period, the insured takes a risk and must demonstrate either consent or waiver by the carrier or a lack of prejudice to the carrier if the carrier, within that period, gives notice of its election to pay the settlement amount.

. . . .

While plaintiff settled with the tortfeasor within the thirty days, defendant never delivered a response within that period, either objecting to the settlement or offering to pay the settlement proceeds. Having not responded in writing within thirty days of receipt of plaintiff's notice, the carrier's right of subrogation cannot be deemed to have been compromised. Thus, although he settled with the tortfeasor, plaintiff can also pursue his UIM claim against the carrier.

[*Id.* at 334–35, 685 A.2d 36 (citation omitted).]

Applying the *Breitenbach* reasoning to the unique facts here, we conclude defendant must provide plaintiff with UIM arbitration. The *Longworth* thirty-day time period is not applicable in this instance.

Defendant's claim adjuster knew the statute of limitations would run on March 10, 1996. Defendant cannot disavow that knowledge and hide behind the thirty-day provision on the ground it settled the tortfeasor claim conditioned upon a *Longworth* letter. The knowledge of the tortfeasor adjuster has to be imputed to defendant. That imputed knowledge combined with defendant's delayed handling of the *Longworth* letter dictates against defendant's entitlement to claim prejudice. A carrier may not deny a claim for UIM coverage on grounds of prejudice where its own acts caused or significantly contributed to the claimed prejudice. Here, defendant's conduct and knowledge bar its right to reject plaintiff's UIM arbitration claim.

*Longworth* was decided upon principles of fairness. We find no fairness in defendant's claims given its dual rule and its contribution to its lost opportunity to seek subrogation from the tortfeasor, its own insured.[1]

---

[1] We note that the Law Division recently held in *Walsh v. State Farm Ins. Co.,* 301 *N.J.Super.* 619, 623, 694 A.2d 324 (Law Div.1997), which is factually

The order under appeal is reversed. The matter is remanded to the trial court for entry of an order requiring defendant to submit plaintiff's UIM claim to arbitration.

Reversed.

---

inapposite, that where an insurer offers the liability policy limits of its insured in exchange for a complete release from the injured party, the injured party need not first obtain written consent to accept the settlement offer from another department of the same insurer in order to preserve a UIM claim under another policy issued by that insurer.