IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 30, 2013 Session

**CHRISTINE STEVENS EX REL. MARK STEVENS v. HICKMAN COMMUNITY HEALTH CARE SERVICES, INC. ET AL.**

**Appeal by Permission from the Court of Appeals, Middle Section
Circuit Court for Hickman County
No. 11CV41      Robbie T. Beal, Judge**

_____

**No. M2012-00582-SC-S09-CV - Filed November 25, 2013**

_____

GARY R. WADE, C.J., concurring in part and dissenting in part.

On April 11, 2011, Christine Stevens (the "Plaintiff") provided written notice to Hickman Community Health Care Services, Inc., Elite Emergency Services, LLC, and Halford Whitaker, M.D. (collectively, the "Defendants"), advising each of them of her potential health care liability claim based upon their negligent treatment of her late husband, Mark Stevens. As required by Tennessee Code Annotated section 29-26-121(a)(2)(A)–(D) (Supp. 2011), the Plaintiff's notice included the full name and date of birth of the Plaintiff's late husband; the contact information for the Plaintiff; the name and address of the Plaintiff's counsel; and a list of the names and addresses of all providers being sent a notice. The notice also included a medical authorization form intended to allow each of the Defendants to access the medical records in the possession of the other Defendants, as is required under Tennessee Code Annotated section 29-26-121(a)(2)(E). The medical authorization form, however, was not fully compliant with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.).

Despite having received the Plaintiff's written notice, the Defendants made no effort to secure a corrected medical authorization form. On September 13, 2011, 155 days after the notice, the Plaintiff filed a complaint against each of the Defendants. In November of 2011, the Defendants separately moved to dismiss the Plaintiff's complaint with prejudice because of the errors in the medical authorization form.

The majority concludes that the Plaintiff's complaint must be dismissed because of her failure to comply with section 29-26-121(a)(2)(E). I disagree. The proper inquiry, in my opinion, is whether the overall content of the pre-suit notice is in substantial compliance with

section 29-26-121. Because the pre-suit notice was compliant with four of the five content requirements set forth in section 29-26-121 and the Defendants have not demonstrated any prejudice caused by the deficiency in the medical authorization form, I believe that the complaint should not be dismissed. Therefore, I respectfully dissent.

## I. Analysis

"In law . . . the right answer usually depends on putting the right question." Rogers' Estate v. Helvering, 320 U.S. 410, 413 (1943). In evaluating the pre-suit notice, the majority focuses entirely upon the question of whether the notice complied with Tennessee Code Annotated section 29-26-121(a)(2)(E), the provision directing potential claimants to include a "HIPAA compliant medical authorization" in their pre-suit notice. In contrast to the majority's narrowly framed issue, I believe the determinative question is whether the content of the notice met the aggregate requirements of the pre-suit notice statute.[1] This inquiry presents two issues: (1) whether the content requirements of the pre-suit notice statute are subject to strict or substantial compliance; and (2) whether, applying the appropriate standard, the deficient medical authorization form requires dismissal of the complaint.

### A. Standard for Evaluating Content of Pre-suit Notice

The content of the pre-suit notice is governed by Tennessee Code Annotated section 29-26-121(a)(2), which provides as follows:

The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

---

[1] Framing the issue in this manner is more consistent with the way in which the issue has been presented by the parties. See Br. of Appellant 1 ("Has Defendant received proper Notice under Tennessee Code Annotated section 29-26-121(a)(2) . . . when Plaintiff provided a non-compliant [HIPAA form]?"); Br. of Appellee 1 ("Whether Tenn. Code Ann. § 29-26-121(a) compliance is subject to a standard of substantial compliance and, if so, whether [the Plaintiff] substantially complied with said statute.").

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

In Myers v. AMISUB (SFH), Inc., this Court held that a plaintiff's obligation to provide notice at least sixty days before filing a complaint is mandatory; we declined, however, to decide whether the statutory "requirements as to the content of the notice . . . may be satisfied by substantial compliance." 382 S.W.3d 300, 310 (Tenn. 2012). This important question is now squarely before us. If the content requirements of the notice are mandatory, the Plaintiff must strictly comply with each of the terms, which she plainly has not done. In contrast, if the content requirements are directory, they can be satisfied by substantial compliance. See id.

"There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions." 3 Norman J. Singer & J.D. Singer, Statutes and Statutory Construction § 57:2 (7th ed. 2008) [hereinafter Singer & Singer]. While a statute's use of the term "shall" is often indicative of a mandatory requirement, Myers, 382 S.W.3d at 308-09, that is not always the case, see, e.g., Jordan v. Knox Cnty., 213 S.W.3d 751, 783 (Tenn. 2007) (concluding that time period requirements in county charter were directory despite the use of mandatory language); see also Holdredge v. City of Cleveland, 402 S.W.2d 709, 713 (Tenn. 1966) (observing that the term "shall" may be construed as directory under certain circumstances). In determining whether the term "shall" is mandatory or directory, this Court must address "whether the prescribed mode of action is of the essence of the thing to be accomplished." Myers, 382 S.W.3d at 309 (emphasis added) (quoting Singer & Singer § 57:2).

A number of different purposes may be attributed to the pre-suit notice statute, such as encouraging the evaluation of the merits of a claim before the commencement of litigation and facilitating early settlement. In Myers, however, this Court unambiguously held that "[t]he essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed." 382 S.W.3d at 309 (emphasis added). As noted, the content provisions of the pre-suit notice statute direct a potential claimant to include several items in the pre-suit notice, including a medical authorization form and information pertaining to the patient, the claimant, the claimant's attorney, and the health care providers involved. See Tenn. Code Ann. § 29-26-121(a)(2). None of these requirements are "of the essence of the thing to be accomplished"—that is, they are not essential for "a defendant [to] be given notice of a medical malpractice claim before suit is

filed." Myers, 382 S.W.3d at 309. In consequence, I view the content requirements as directory in nature, meaning that a plaintiff may avoid dismissal by substantially complying with their terms.[2]

### B. Substantial Compliance of the Notice

Having determined that a standard of substantial compliance applies to the content requirements of the pre-suit notice statute, the significant question is whether the notice at issue meets that standard. In assessing substantial compliance with a statute, this Court, like courts in other jurisdictions, traditionally focuses on the extent of the shortcomings and whether those shortcomings have frustrated the purpose of the statute or caused prejudice to the adversary party. See, e.g., Jones v. Prof'l Motorcycle Escort Serv., L.L.C., 193 S.W.3d 564, 572-73 (Tenn. 2006) (finding substantial compliance with Tennessee Rule of Civil Procedure 15.01 where the plaintiff complied with all but one provision of the rule and the defendant was not prejudiced); see also Ray v. City of Birmingham, 154 So. 2d 751, 752 (Ala. 1963) (finding substantial compliance with pre-suit notice statute where the plaintiff's technically deficient notice did not interfere with the purpose of the statute, which was "to enable the [defendant] to investigate and determine the merits of the claim"); Galik v. Clara Maass Med. Ctr., 771 A.2d 1141, 1149 (N.J. 2001) (holding that a party substantially complies with the state's medical malpractice statute when "the underlying purpose of the statute is met and . . . no prejudice is visited on the opposing party"). As the parties seeking dismissal of the complaint, the Defendants should have the initial burden of demonstrating the Plaintiff's failure to comply by referencing specific omissions and submitting any necessary proof. Myers, 382 S.W.3d at 307. Where, as here, the standard is substantial compliance, that burden includes demonstrating the Plaintiff's noncompliance and showing how that noncompliance interfered with the purpose of the statute and caused prejudice. If the Defendants make such a showing, the burden should shift to the Plaintiff to establish that she complied with the statutes or had extraordinary cause for failing to do so. See id.

The first factor to consider is the extent of the Plaintiff's noncompliance. It is undisputed that the Plaintiff's notice fully complied with Tennessee Code Annotated section 29-26-121(a)(2)(A)–(D), thereby satisfying four of the five content requirements. The deficiency in the notice relates to subsection 29-26-121(a)(2)(E), which directs a claimant

---

[2] The majority purports to adopt a substantial compliance standard for section 29-26-121(a)(2)(E). The majority indicates, however, that the substantial compliance standard will only allow "less-than-perfect" compliance where a plaintiff's medical authorization form contains "[n]on-substantive errors" which do not prevent defendants from being able to obtain a plaintiff's relevant medical records. Because the standard adopted by the majority requires near perfection and only forgives non-substantive errors, such as a typographical mistake, the standard, in my opinion, is closer to strict compliance in application.

to provide a "HIPAA compliant medical authorization."  In an attempt to comply with this provision, the Plaintiff provided a standard medical authorization form to each Defendant. Because of inadvertent errors, however, the form mistakenly authorized counsel for the Plaintiff, rather than the Defendants, to obtain the relevant medical records.  In addition, the authorization failed to provide a description of the records to be disclosed, the individuals authorized to disclose the records, or the purpose of the disclosure.  See 45 C.F.R. § 164.508(c)(1)(i)–(ii), (iv) (2013).  As pointed out by the majority, the deficiencies in the medical authorization form were significant.  Nevertheless, the Plaintiff's full compliance with four of the five statutory content provisions weighs in favor of finding that the pre-suit notice was in substantial compliance.

The next consideration is whether the noncompliance with the medical authorization requirement interfered with the purposes of section 29-26-121 or otherwise caused prejudice to the Defendants.  The primary purpose of section 29-26-121 is, of course, to ensure that health care providers are provided with timely notice of potential claims prior to the commencement of litigation.  Myers, 382 S.W.3d at 309.  Despite the deficiencies in the medical authorization form, the pre-suit notice accomplished the purpose of notifying the Defendants of the Plaintiff's potential claim.  So, the Defendants can claim no prejudice by the lack of actual notice.

Section 29-26-121 also serves the related purposes of allowing health care providers to evaluate the merits of potential health care liability claims before a suit is commenced, facilitating communication among the parties, and encouraging early settlement negotiations. See DePue v. Schroeder, No. E2010-00504-COA-R9-CV, 2011 WL 538865, at *5-7 (Tenn. Ct. App. Feb. 15, 2011) (citing Jenkins v. Marvel, 683 F. Supp. 2d 626 (E.D. Tenn. 2010); Howell v. Claiborne & Hughes Health Ctr., No. M2009-01683-COA-R3-CV, 2010 WL 2539651, at *15-16 (Tenn. Ct. App. June 24, 2010), overruled on other grounds by Myers, 382 S.W.3d at 310 n.10).  The Defendants assert in this appeal that they were prejudiced in terms of their ability to evaluate the merits of the potential claim because the inadequate medical authorization form precluded each from accessing the others' records of treatment. The majority adopts this position, holding that a defendant is presumptively prejudiced any time a claimant provides a medical authorization form that does not comply with HIPAA.

In my view, the issue of prejudice is fact specific and hinges on whether a defendant could have obtained the records in question through reasonable efforts despite the inadequacy of the medical authorization form provided in the pre-suit notice.  See Galik, 771 A.2d at 1149 ("In each case, the court is required to assess the facts against the clearly defined elements [of substantial compliance] to determine whether technical non-conformity is excusable.").  Here, the Defendants, in my view, could easily have recognized the inadequacy of the medical authorization form some five months before the filing of the complaint.  At

that point, the Defendants had several options. Initially, the Defendants could have simply asked the Plaintiff's counsel for a HIPAA-compliant form, thereby participating in the statutory goal of facilitating a timely evaluation of the merits of the potential claims. Alternatively, after the filing of the suit, the Defendants could have sought a court order requiring the Plaintiff to grant them access to the medical records. Finally, the Defendants had the option of doing nothing, making no effort to obtain the authorization needed to fully investigate the claim and strategically lying in wait for the optimal moment to seek a dismissal. Here, the Defendants chose the third option, addressing the inadequate medical authorization form for the first time by filing motions to dismiss approximately seven months after receipt of the pre-suit notice.

Because, whenever possible, disputes should be settled on the merits rather than on procedural grounds, see, e.g., Henry v. Goins, 104 S.W.3d 475, 481 (Tenn. 2003),[3] I cannot agree with the majority's conclusion that the inadequate medical authorization form effectively prevented access to the medical records, all of which collectively were in the hands of the Defendants. By failing to take minimal steps toward obtaining a proper medical authorization, the Defendants, in my view, have forfeited any claim of prejudice. Cf. Hutnick v. ARI Mut. Ins. Co., 918 A.2d 729, 734 (N.J. Super. Ct. App. Div. 2007) (holding that a party cannot claim prejudice "where its own acts caused or significantly contributed to the claimed prejudice" (quoting Kor v. Nat'l Consumers Ins. Co., 706 A.2d 776, 780 (N.J. Super. Ct. App. Div. 1998))); SAA Grp., LLC v. Old Republic Nat'l Title Ins. Co., No. 09-157-BLS1, 2011 WL 1815725, at *5 (Mass. Super. Ct. Apr. 25, 2011) (observing that a party "cannot claim prejudice through its own failure to conduct an adequate investigation"). By granting the motions to dismiss for failure to comply with a procedural requirement, the majority's ruling, in my assessment, contravenes the pre-suit notice statute's purpose of encouraging both communication among the parties and the evaluation of the merits of potential claims.

Because the Defendants have failed to demonstrate that the Plaintiff's inadequate medical authorization form subjected them to prejudice or appreciably interfered with any

---

[3] The general policy of this Court in favor of settling disputes on the merits is also reflected in both the Tennessee Rules of Civil Procedure and the Tennessee Rules of Appellate Procedure. See Tenn. R. App. P. 1 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." (emphasis added)); Jones, 193 S.W.3d at 572 ("The Tennessee Rules of Civil Procedure are intended 'to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties.'" (quoting Karash v. Pigott, 530 S.W.2d 775, 777 (Tenn. 1975))).

purpose of section 29-26-121, I would hold that the content of the Plaintiff's pre-suit notice was in substantial compliance with the statute as a whole.[4]

## II. Conclusion

In summary, the content requirements of Tennessee Code Annotated section 29-26-121 are not of the essence of the statute, and, in consequence, may be satisfied by substantial compliance. Because the Plaintiff complied with four of the five content provisions of section 29-26-121 and the Defendants have failed to demonstrate prejudice or interference with the purposes of the statute, the Plaintiff's pre-suit notice substantially complied with the content requirements of section 29-26-121. Accordingly, I would affirm the trial court's denial of the motions to dismiss and allow the action to proceed.

I am authorized to state that Justice Holder joins in this opinion.

_____
GARY R. WADE, CHIEF JUSTICE

---

[4] In light of this conclusion, I would not reach the remaining issues in this appeal. I agree with the majority, however, that dismissal under section 29-26-121, when warranted, should be without prejudice.