863 A.2d 1085 (2005)
374 N.J. Super. 159
Robert J. CONNELLY, Plaintiff-Respondent,
v.
David K. McVEIGH, Defendant-Respondent, and
New Jersey Manufacturers Insurance Company, Defendant/Intervenor-Appellant, and
Theresa Jackson, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 2004.
Decided January 7, 2005.
*1086 Donald S. McCord, Jr., Morristown, argued the cause for appellant (O'Donnell, McCord & DeMarzo, attorneys; Mr. McCord of counsel, David N. Heleniak, and Mr. McCord, on the brief).
Robert D. Kobin, Morristown, argued the cause for respondent Robert J. Connelly (Nusbaum, Stein, Goldstein, Bronstein & Kron, attorneys; Mr. Kobin, on the brief).
Brian R. O'Toole, Whippany, argued the cause for respondent David K. McVeigh (O'Toole & Couch, attorneys; Mr. O'Toole, on the brief).
Before Judges STERN, COBURN and WECKER.
The opinion of the court was delivered by
WECKER, J.A.D.
This appeal presents a new issue arising out of the relationship between an injured party's auto negligence suit and his claim for underinsured motorist (UIM) benefits.
Defendant/Intervenor, New Jersey Manufacturers Insurance Company (NJM), appeals from two orders. One order denied NJM's motion either to require its insured, plaintiff Robert Connelly, to return $100,000 which NJM was ordered to pay him under Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988), or to impress a constructive trust upon that payment. The other order denied NJM's motion to impress a constructive trust upon $100,000, the sum previously deposited with the Superior Court by Allstate Insurance Co. as an offer of settlement on behalf of its insured, defendant David McVeigh.[1]
These are the salient background facts. Connelly was injured when the car in which he was a passenger was involved in an accident with a car driven by McVeigh. McVeigh had $100,000 coverage under a liability policy issued by Allstate, whereas plaintiff Connelly had $300,000 underinsured *1087 motorist (UIM) coverage under his own policy issued by NJM. When Allstate offered its policy limit to Connelly to settle his claim against McVeigh, Connelly notified NJM in accordance with the Longworth procedure approved by the Supreme Court in Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995). But NJM's investigation revealed that McVeigh had substantial assets, such that a verdict in excess of $100,000 likely would be collectible against him personally without resort to Connelly's UIM coverage. NJM therefore refused to consent to the settlement with Allstate, instead choosing to preserve its subrogation rights against McVeigh. As a result, the Law Division ordered NJM to pay Connelly $100,000, the sum that he was required to forego because NJM refused consent to the Allstate settlement. The same order allowed NJM to intervene as a defendant in Connelly's negligence suit against McVeigh. During the pendency of Connelly's suit against McVeigh, Allstate was allowed to deposit its $100,000 policy into court, thereby protecting itself against an assessment of pre-judgment interest on any verdict Connelly might obtain.
The Law Division judge expressly left it to plaintiff and NJM to "work out" the procedural issues: whether UIM arbitration or a trial of Connelly's negligence complaint against McVeigh should proceed first.[2] Considerations included the potential for a trial de novo on Connelly's UIM claim against NJM if UIM arbitration were to precede the negligence trial, as well as the potential conflict arising from NJM's participation in the negligence suit.[3]
After numerous communications between counsel over procedure, the details of which are no longer relevant, Connelly and NJM eventually entered into a "Release and Trust Agreement" (the Agreement), whose relevant provisions are set forth below:
WHEREAS, Allstate has offered to pay $100,000.00 of the limits of the Allstate Policy in settlement of the claims made by Connelly against David McVeigh; and
WHEREAS, Connelly in the belief that his damages are greater than $100,000.00 has elected to make a claim under the terms of the underinsured motorist coverage provided in the NJM Policy and to assign to NJM all rights of recovery which he has against David McVeigh, except as herein noted; and
....
WHEREAS, NJM and Connelly are desirous of avoiding any further litigation on procedural matters pertaining to the under insured claim;
NOW, THEREFORE, the parties agree as follows:
1. NJM shall pay to Connelly the sum of One Hundred Thousand ($100,000.00) Dollars.
2. In consideration for the payment of One Hundred Thousand ($100,000.00) Dollars, Connelly hereby assigns to NJM all rights of recovery up to any amount paid to Connelly by NJM which *1088 he shall have against David McVeigh or any person or organization legally liable for the personal injuries sustained by Connelly in the accident of September 9, 1998 and assigns to NJM the proceeds of any settlement with or judgment against David McVeigh or such other person or organization up to any amount paid to Connelly by NJM.
3. NJM and Connelly will cooperate and attempt to expedite the completion of discovery in this matter by the discovery end date of May 9, 2002 as well as the scheduling of an arbitration as soon thereafter as the parties can agree.
4. If the arbitration can not be accomplished prior to the scheduled trial date, NJM and Connelly shall join in an application to dismiss the underlying matter of Connelly v. McVeigh, et.al. Docket No.  MRS L-1473-99 without prejudice pending the outcome of an arbitration.
5. Pursuant to the policy, if the UIM award exceeds $15,000.00 either NJM or Connelly may demand a Trial by Jury on all issues. [If] either party exercises the right to a Jury Trial, Plaintiff Connelly shall apply to the court to restore the underlying matter to the active trial calendar.
6. NJM and Connelly agree that Plaintiff's counsel shall try this action on behalf of Connelly if either NJM or Connelly does not agree to the outcome of the arbitration and Connelly agrees to assign to NJM the judgment that results from said trial up to the amount of $300,000.00. If the underlying matter is restored to the trial calendar as a result of a demand for a jury trial by NJM or Plaintiff Connelly, NJM shall have the right to intervene in the trial pursuant to Zirger v. General Acc. Ins. Co. 144 N.J. 327, 676 A.2d 1065 (1996) and to actively participate in the defense of the underlying matter.
7. If NJM and Connelly are satisfied with the outcome of the arbitration or otherwise resolve the underinsured claim, then Connelly will assign any and all rights that he has against McVeigh, and authorizes NJM to take any action which may be necessary, either in law or in equity in its discretion, in the name of Connelly against David McVeigh or such other person or organization legally liable for the personal injuries sustained by Connelly in the accident of September 9, 1998 and Connelly covenants and agrees to cooperate fully with NJM in the presentation of such claims and to furnish all papers and documents necessary in such proceedings and to attend court and testify if NJM deems such to be necessary.
8. If NJM shall recover from David McVeigh or any person or organization legally liable for the personal injuries sustained by Connelly an amount in excess of that paid to Connelly by NJM, then Connelly shall be entitled to the excess less Connelly's pro rata share of attorney's fees and costs associated in prosecuting the case and collecting the judgment.
9. Connelly warrants that he has made no settlement with, given any release to or prosecuted any claim to judgment against David McVeigh or such other person or organization legally liable for the personal injuries sustained by Connelly in the accident of September 9, 1998, and that no such settlement will be made, no such release will be given, and no such claim will be prosecuted to judgment without the written consent of NJM.
10. NJM and Connelly hereto agree that notwithstanding the Agreement as set forth herein, Connelly has the right to pursue a claim against NJM under the terms of the NJM Policy Number F959552 to the three Hundred Thousand *1089 ($300,000.00) Dollar limits of the underinsured motorist coverage provided in said NJM Policy, subject only to NJM's credit in the amount of coverage available under the McVeigh policy, or One Hundred Thousand ($100,000.00) Dollars.
Paragraph 2 of the Agreement provided for NJM to pay Connelly $100,000 in exchange for his assignment of "all rights of recovery" against McVeigh.[4] The Agreement, however, did not allow NJM to control Connelly's negligence suit for damages unless he received a UIM arbitration award that satisfied him prior to his trial against McVeigh. In that event, Paragraph 7 provided that NJM would have the right to try Connelly's case against McVeigh.[5]
Neither party moved to enforce its right to arbitrate Connelly's UIM claim prior to trial, a right which Paragraphs 3 and 4 of the Agreement together had preserved. Paragraph 5 preserved the right of both NJM and Connelly to a trial de novo if a UIM arbitration award exceeded $15,000. Paragraph 6 provided that if UIM arbitration did not produce an outcome acceptable to both parties, Connelly's counsel would try the case against McVeigh, and NJM would intervene on the side of the defense in that action. In fact, that is what occurred. Because neither party sought arbitration, NJM intervened as a defendant in Connelly's negligence suit against McVeigh. The result was a single trial of Connelly's damages claims against both McVeigh and NJM. Significantly, the Agreement provided, without condition, that NJM would be obligated to Connelly for at least $100,000 (the amount of the Allstate offer to settle), an obligation consistent with Vassas and Longworth.
Both parties to the Agreement obviously contemplated that Connelly's injuries would result in a recovery in excess of $100,000, whether by trial or settlement, and whether against McVeigh or NJM or both. The Agreement did not explicitly recognize the possibility that Connelly could recover nothing in a trial against McVeigh. At trial, however, that is what happened when the jury found that Connelly failed to meet the verbal threshold. After the jury verdict, Allstate was permitted to withdraw the $100,000 it had deposited into court. NJM's motion to recover the $100,000 it had paid to Connelly was denied.
On appeal, NJM makes these arguments:
POINT I
WHEN THE INSURANCE COMPANY FOR A DEFENDANT IN A PERSONAL INJURY ACTION DEPOSITS ITS APPLICABLE POLICY LIMIT PURSUANT TO R. 4:57, DOING SO MUST BE REGARDED AS THE MEMORIALIZATION OF AN OFFER WHICH, UPON DEPOSIT, BECOMES IRREVOCABLE, AND ONLY SUBJECT TO WITHDRAWAL IN ACCORDANCE WITH THE PROCEDURES SET FORTH THEREIN (THIS POINT MIGHT BE REGARDED AS AN ISSUE NOT RAISED BELOW).
POINT II
THE TRIAL COURT ERRED BY NOT IMPRESSING A CONSTRUCTIVE TRUST UPON THE $100,000.00 NJM WAS DIRECTED TO PAY THE *1090 PLAINTIFF PURSUANT TO [THE] DECEMBER 11, 2001 ORDER.
After careful review of the record, the briefs, and the arguments of counsel, we are convinced that NJM's arguments are without merit. See R. 2:11-3(e)(1)(E). We affirm. Nonetheless, some discussion is appropriate.
NJM takes the position in Point I that "once a tortfeasor's carrier offers its policy limit" and deposits its policy with the court, its offer is irrevocable and can be withdrawn only in accordance with the procedures set forth in Rule 4:57. We disagree, finding no support for NJM's position. Rule 4:57 does not govern the substantive rights of the parties. NJM's argument in effect would turn a rejected settlement offer into a guaranteed minimum recovery, available as a safety net to a plaintiff (and its UIM carrier) right up until the jury announces that it has reached a verdict. Moreover, the September 29, 2003 Law Division order, which allowed Allstate to withdraw its previously deposited $100,000, met the procedural safeguards of the court rule.
We also find no support for NJM's contention that a constructive trust should have been imposed on the $100,000 it was required to pay to plaintiff, because "plaintiff was unjustly enriched thereby." NJM got exactly what it bargained for in its Agreement with Connelly: preservation of its subrogation claim against McVeigh, in exchange for guaranteeing Connelly the settlement he was forced to turn down. Connelly did not get a windfall; he would have accepted and received $100,000 from Allstate and been free of the risks of trial against McVeigh but for NJM's refusal to consent to the settlement offer.
NJM admits that "because [McVeigh] had substantial assets and income, NJM objected to the plaintiff, its insured, accepting the offer and giving a release." But NJM argues that "plaintiff and his attorneys [] opted to pursue the case to conclusion by trial in accordance with Zirger [v. Gen. Accident Ins. Co., 144 N.J. 327, 676 A.2d 1065 (1996)], while at the same time insisting on plaintiff's right to `prepayment' of $100,000 pursuant to Longworth." Elsewhere in its brief NJM admits that Connelly sought less than his $300,000 UIM policy limit to resolve his damages claim. There is no dispute that plaintiff's settlement demand was never more than $200,000 and was reduced further during the course of the trial. Logically, then, there was no advantage and no motivation for plaintiff to reject the Allstate settlement offer in favor of a trial against both McVeigh and NJM.[6] The only rational basis for a plaintiff in Connelly's position to reject the offered policy limit is if his anticipated damages exceed his available UIM coverage. To the contrary, plaintiff here was forced to try his case against McVeigh only because NJM refused to consent to the Allstate settlement offer.
Longworth established procedures to address the interrelationship between conflicting provisions contained in typical underinsured motorist policies, specifically, the exhaustion, consent-to-settle, and subrogation clauses. Longworth, supra, 223 N.J.Super. at 176, 538 A.2d 414. After detailing the history of statutory underinsured insurance protection, this court noted the impediment to settlement of the underlying negligence action arising from the conflict between the duty of a tortfeasor's *1091 liability insurer to obtain a general release as a condition for settlement, and the injured party's duty to preserve its own UIM carrier's subrogation rights where a general release would impair those rights. Id. at 190, 538 A.2d 414. See generally Craig & Pomeroy, New Jersey Auto Insurance Law, § 28:3 (2005).
In Vassas, supra, the Supreme Court held that the insured was barred from pursuing UIM coverage because it had failed to protect its UIM carrier's subrogation rights by settling its claim against the tortfeasor without notice to the UIM carrier. Nonetheless, the Court took the opportunity to "essentially" adopt the Longworth procedures. 139 N.J. at 171, 652 A.2d 162.
Under Longworth and Vassas, an injured party who anticipates that his damages may exceed the tortfeasor's coverage, and who also anticipates a claim against its own UIM carrier, has a duty to notify that carrier of the happening of the accident and his injuries, of any claim against an alleged tortfeasor, of the nature and extent of the tortfeasor's insurance coverage, and of the progress of any proceeding against the tortfeasor. If a settlement offer is received on behalf of the tortfeasor, the injured party must notify his UIM carrier and obtain its consent before accepting a settlement that would bar subrogation by providing a general release to the tortfeasor. See Rivers v. Allstate Ins. Co., 312 N.J.Super. 379, 383-84, 711 A.2d 974 (App.Div.1998) (summarizing the "three-step procedure" required of the injured party by Vassas and Longworth to protect a UIM claim). In other words, the injured party must preserve his UIM carrier's subrogation rights. A UIM carrier that does not respond to a request for consent to settle within a reasonable time may have waived its right to withhold consent and thus forfeit its potential subrogation claim. See Vassas, 139 N.J. at 174-75, 652 A.2d 162.
Zirger involved a somewhat different but related issue concerning the potential for duplicative legal proceedings engendered by the co-existence of contractual UIM arbitration and auto negligence litigation. In Zirger, the Court emphasized that duplicative, expensive, and delaying proceedings are contrary to the legislative intent and the rationale behind statutorily mandated UM/UIM coverage. 144 N.J. at 342-44, 676 A.2d 1065. The Court held that a UIM carrier has no right to UIM arbitration after a trial of its insured's claim against the tortfeasor, as long as the carrier had notice and the opportunity to intervene as a defendant in that action. 144 N.J. at 342, 676 A.2d 1065; see also Wylie v. Hamilton, 365 N.J.Super. 153, 155, 838 A.2d 514 (App.Div.2004) (holding that the UIM carrier was bound by an auto arbitration award when the carrier fully participated and failed to seek a trial de novo; the UIM arbitration clause was unenforceable under Zirger). Cf. Scheer v. DiBenedetto, 346 N.J.Super. 550, 788 A.2d 830 (App.Div.2002) (holding that the UIM carrier should have been permitted to remain as a defendant at trial after its insured settled with one of the two named defendants with the carrier's consent).
NJM's reliance upon Zirger is misplaced, and its contention that Zirger and Longworth are mutually exclusive is mistaken.[7] In Zirger, the Court held that a UIM carrier's acquiescence in its insured's intention to try its damage claim against the underinsured tortfeasor, without first seeking contractual arbitration of the UIM claim, constituted a waiver of its right to *1092 arbitration, with the result that it was bound by the jury's verdict on damages under principles of collateral estoppel. 144 N.J. at 342, 676 A.2d 1065. NJM would have us conclude that plaintiff here is equally bound by the jury's no-cause verdict. Such a conclusion is neither logical nor fair on these facts, in light of Vassas and Longworth.
In this case, NJM refused to allow plaintiff to accept the $100,000 Allstate policy limit, thereby obligating itself to pay that sum to plaintiff in order to preserve its subrogation claim. Neither NJM nor plaintiff demanded arbitration of the UIM claim before the trial against the tortfeasor, as Paragraphs 3 and 4 of the Resolution and Trust Agreement allowed, and NJM was permitted to intervene as a defendant in the negligence action against McVeigh. Thus each accepted the risk of being bound by the damages award in that action.
The question presented by this appeal is the effect of that decision. NJM argues in effect that the collateral estoppel effect of Zirger bars Connelly from retaining the $100,000 he received from NJM. That position is based on a misunderstanding of the nature of NJM's obligation to Connelly. NJM owed $100,000 to Connelly as the price of preserving its own subrogation rights against McVeigh, and not as a measure of Connelly's damages. While plaintiff obviously cannot recover any additional sum from NJM, having failed to prove damages in excess of the tortfeasor's policy limits, NJM nonetheless remains obligated for the payment it made to preserve its own right of subrogation. That payment was due as a consequence of its refusal to allow plaintiff to accept the Allstate settlement.
Finally, we derive these principles from the Court's opinion in Zirger: (1) that trial courts have discretion to deal with "specific motions for intervention" and to address and resolve case management issues involving UM/UIM carriers; (2) by inference, that trial judges must deal with the procedural issues raised by varying facts and circumstances involving UIM claims; and (3) that contractual rights to arbitrate UM/UIM claims must not result in duplicative dispute resolution proceedings or an unreasonable delay in paying intended UM/UIM benefits. Id. at 341-44, 676 A.2d 1065. As the Court said in Green v. Selective Ins. Co. of Am., 144 N.J. 344, 353, 676 A.2d 1074 (1996):
One of the themes that we have stressed in our approach to the handling of UIM issues is that, to the greatest extent possible, we should attempt to tie up in one package all of the loose ends that are attendant to automobile-accident claims. In [Parks v. Colonial Penn Ins. Co., 98 N.J. 42, 49, 484 A.2d 4 (1984)], we applauded the aim of a "one-stop" proceeding whenever the interests of the parties were procedurally protected.
See also Craig & Pomeroy, New Jersey Auto Insurance Law, § 23:2 at 379 (2005).
Affirmed.
NOTES
[1] NJM also appeals from earlier orders requiring it to pay $100,000 to Connelly and allowing Allstate to withdraw the $100,000 it had previously deposited with the court.
[2] As we noted in Ainsworth v. State Farm Mut. Ins. Co., 284 N.J.Super. 117, 131, 663 A.2d 1365 (App.Div.1995) (citing Longworth, 223 N.J.Super. at 195, 538 A.2d 414), certif. denied, 143 N.J. 328, 670 A.2d 1068 (1996), a UIM carrier is not required by statute to arbitrate prior to final disposition of the case against the tortfeasor.
[3] A UIM carrier which is permitted to intervene as a defendant in its insured's negligence case against the alleged tortfeasor is representing its own interest in minimizing the UIM claim, whereas its subrogation right (to stand in the shoes of its own insured as a plaintiff in the negligence action) can proceed without a conflict of interest only after the UIM claim has been resolved.
[4] McVeigh conceded liability for the accident, and the trial was limited to Connelly's damages claim.
[5] Much of the delay and dispute between NJM and Connelly prior to execution of the Release and Trust Agreement had to do with NJM's demand to take control of the negligence action before resolving the UIM claim and Connelly's refusal to agree to that demand.
[6] We do not face a situation where a tort plaintiff does not wish to accept the tortfeasor's settlement offer, but prefers to try the negligence action in the belief, perhaps, that the tortfeasor's personal assets and the extent of the plaintiff's provable damages are likely to produce a larger recovery for the injured plaintiff than he could receive from a combination of the tortfeasor's insurance and his own UIM coverage.
[7] NJM argues in part that Zirger applies only when a plaintiff is unwilling to settle his claim against the tortfeasor, whereas Longworth applies only when a plaintiff is willing to settle and agrees to give control of the action against the tortfeasor to the UIM carrier.