995 A.2d 1124 (2010)
413 N.J. Super. 458
Anthony TONIC and Yvonne Tonic, Plaintiffs-Appellants,
v.
AMERICAN CASUALTY CO., i/p/a CNA Insurance Co., Defendant-Respondent, and
Luz Marina Canon, Defendant.
DOCKET NO. A-3383-07T1
Superior Court of New Jersey, Appellate Division.
Argued December 1, 2009.
Decided May 27, 2010.
*1125 Manfred C. Gernand, New Brunswick, argued the cause for appellants.
Jerald J. Howarth, Parsippany, argued the cause for respondent (Howarth & Associates, LLC, attorneys; Mr. Howarth and Purnima D. Ramlakhan, on the brief).
Before Judges WEFING, MESSANO and LeWINN.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiff Anthony Tonic appeals from the dismissal with prejudice of his complaint seeking underinsured motorist (UIM) benefits pursuant to an automobile insurance policy issued to his employer by defendant American Casualty Company, improperly pled as CNA Insurance Co. Having considered the arguments raised on appeal in light of the record and applicable legal standards, we reverse and remand the matter for further proceedings consistent with this opinion.

I.
On January 2, 2006, plaintiff was employed as a bus driver for a shuttle service that operated between Newark Airport and the Hampton Inn in Linden.[1] The bus was owned by his employer, Hersha Enterprises, Inc., and was insured under a policy issued by defendant. As plaintiff was entering the bus at the airport, he was struck by the side mirror of a passing van that drove off without stopping. Plaintiff sustained injuries as a result, and ultimately underwent back surgery.
The following day, plaintiff reported the accident to the Port Authority Police Department. He supplied the police with the license plate number of the van, as well as a description of the drivera stocky, Hispanic male with black hair, a mustache and glasses. The police identified the van's owner, Luz Marina Canon of Selden, New York. Plaintiff subsequently learned that Canon maintained insurance on the van through State Farm Insurance Company (State Farm) and that the bodily injury limits of the policy were $25,000 per person and $50,000 per accident.[2]
On July 11, 2006, plaintiff filed a complaint against defendant, Canon and "John Doe 1-3." In the first count, he demanded that defendant "[p]rocess his UM/UIM claim[]" under the policy of insurance issued to his employer, and he sought damages as a result of his injuries. In the second count, plaintiff sought damages caused by the negligence of Canon and/or "John Doe 1-3" identified as the "operator of [the] van." On October 12, 2006, defendant filed its answer and asserted a crossclaim against Canon and the John Doe defendants. Canon also filed an answer, and discovery ensued.
On August 28, 2007, Canon was deposed by defendant.[3] She claimed that on the date of the accident, she was married to Francisco Vasquez and both were in Florida on vacation. Although she and Vasquez had since separated, Canon claimed that he owned his own taxi cab and maintained an insurance policy on it. Also, on the accident date, Canon lived in the same *1126 apartment with Everett and Adrina Palasios who owned two cars. After being notified of plaintiff's claim, Canon asked Mr. Palasios if he had driven her van while she was away; he denied that he had. Canon admitted that she regularly left the keys to the van in a drawer in a table in her room. Two months after the accident, Canon sold the van to Oscar Marino, with whom she later entered into a romantic relationship.
On September 19, 2007, defendant moved for partial summary judgment arguing that since Canon was insured by State Farm, plaintiff had no viable claim for uninsured motorist (UM) benefits under its policy. Plaintiff cross-moved for partial summary judgment seeking a declaration that the van was owned by Canon, that he was entitled to UIM benefits under defendant's policy, and he sought appointment of a UIM arbitrator. Defendant did not file opposition to the cross-motion.
While the motions were pending, on October 8, 2007, plaintiff sent a letter to defendant's attorney stating,
This confirms discussions that plaintiff, if offered the $25,000 . . . as settlement for claim against defendant Canon and John Doe, driver of her car, . . . would accept this offer of the . . . policy [limit]. . . if the UIM carrier does not object within 30 days and pursuant to the Longworth[4] doctrine.
On October 12, 2007, plaintiff's counsel sent another letter indicating that State Farm had offered the policy limit in settlement of the claim. He further indicated that "[t]his is [an] additional [Longworth] Notice . . . [and] unless a written objection is received within 30 [days], plaintiff will send releases to defendant Canon."
On October 19, the motion judge entered two orders. One granted defendant's motion for partial summary judgment "as to plaintiff's UM claims only." The second order granted plaintiff's request for declaratory relief "that the vehicle alleged . . . to have caused his injuries was owned by . . . Canon. . . ." It further provided that "plaintiff [wa]s . . . eligible for [a] UIM claim which [wa]s to proceed in due course[,]" and it additionally ordered defendant to "designate their [sic] arbitrator in the UIM claim . . . within (30) days."
On November 5, 2007, defense counsel sent plaintiff's counsel a letter naming an arbitrator. The letter additionally noted,
[W]e will be maintaining that you do not qualify for UIM. A motion on same will be forthcoming. It would appear that you failed to amend the complaint to name the driver. As a result, our subrogation rights have not been protected.
The record does not reveal that defendant had ever previously requested that plaintiff amend his complaint.
On November 7, 2007, plaintiff's counsel responded that despite diligent efforts, he was unable to identify the driver of the van. He further noted that "UIM regulations permit[ted] [defendant] to take over th[e] suit so that no release [would be] given to State Farm." He asked defendant to "provide . . . the facts that would support [its] contention that [Canon's] boyfriend was the driver." Counsel closed by stating his intention to file a motion "to move this claim along." On November 9, plaintiff moved for an "order permitting [him] to send [a] release to [State Farm] or . . . [alternatively] . . . requiring defendant. . . to pay [the] settlement offered by. . . Canon."
For reasons that are never fully explained in the record, however, Canon had already moved for summary judgment. The order granting that motion, dated November 16, reflects that neither plaintiff *1127 nor defendant filed opposition. We have not been provided with any of the motion papers. Why the motion was filed in the first instance remains a mystery, since on November 29, State Farm sent a letter to plaintiff confirming the offer to settle the case for Canon's policy limits.
On November 28, defendant cross-moved for summary judgment. In his certification, citing Canon's interrogatory answers that she neither drove the van nor was it "operated on her behalf" on the day of the accident, defense counsel claimed that Canon's motion for summary judgment sought dismissal "based on lack of agency." He failed to explain, however, why defendant had not opposed Canon's motion.
Defense counsel further certified that he had notified plaintiff within thirty days of receipt of the Longworth notice that he "did not qualify for UIM benefits as he failed to amend the complaint to name the driver." Citing Canon's testimony that her husband and Mr. Palasios had access to the keys to her van, defendant claimed both should have been named as defendants. Counsel continued that "no viable tortfeasor" remained in the case because Canon had been granted summary judgment. Citing the policy of insurance, counsel claimed "defendant's [subrogation] rights have been impaired as the [c]omplaint was not properly amended. . . ."
Plaintiff filed opposition to defendant's cross-motion. His attorney certified that he had never received the order granting Canon summary judgment and urged that it be vacated because the case was "settled prior to trial [and] [i]t would interfere with the rights of the UIM carrier should it decide to pay the $25,000 . . . policy to the plaintiff and pursue the case against defendants." He argued that Canon's motion was filed by mistake since he had settled the case directly with State Farm's adjuster. Plaintiff further contended that although the "matter was thoroughly investigated[,]" there was no evidence that either of the Palasioses drove the car on the date of the accident.
On January 3, 2008, after considering oral argument, the motion judge dismissed plaintiff's UIM claim with prejudice, concluding that he had failed to "d[o] what [he] w[as] obligated to do under the terms of the insurance policy"; he therefore denied plaintiff's request to appoint a UIM arbitrator, or to compel defendant to pay the $25,000 settlement reached with Canon. Without any explanation of reasons, the judge vacated the November 16, 2007 order granting Canon summary judgment, but denied plaintiff's request to send releases to State Farm.
On January 22, plaintiff moved for reconsideration seeking an order "to permit [him] to send a release to State Farm for $25,000 . . . or have [the] UIM carrier pay said amount[,] . . . [and to] [h]ave [a] trial on [the] issue of whether [he] acted reasonably to ascertain [the] identity of [the] hit and run driver. . . ." Plaintiff included the certification of his investigator who tried to interview Marino, but was unable to locate him or the Palacioses. The investigator's certification also included "skip traces" conducted to locate any assets these individuals may have owned, though it is unclear whether they were requested before the grant of summary judgment to defendant. Plaintiff also argued that he had fully complied with the provisions of the policy regarding a claim for UIM benefits. Lastly, plaintiff attached a proposed amended complaint naming Vasquez, Marino, and the two Palacioses as drivers of the vehicle.
Defendant opposed the motion for reconsideration. It argued that plaintiff's failure to amend the complaint before the statute of limitations expired "alone established *1128 a breach of contract . . . in failing to protect subrogation rights." It further contended that any attempt to do so now would run afoul of the fictitious party rule, Rule 4:26-4, because plaintiff had not been diligent in discovering the identity of the driver. As to plaintiff's request to "forward a release to State Farm," defendant "took no position" given the judge's prior ruling "that plaintiff d[id] not qualify for UIM. . . ." (Emphasis added).
On February 29, after considering oral argument, the motion judge denied plaintiff's reconsideration motion. He concluded that plaintiff had provided no new legal or factual basis to justify reconsideration. Despite defendant taking no position on the release of Canon, the judge's order denied that request.
On March 6, plaintiff forwarded a release of Canon from any and all claims regarding the accident to State Farm in return for $25,000. On March 18, he filed his appeal. We subsequently granted defendant's request for a limited remand to allow "consideration on the issue of plaintiff's compliance with Longworth requirements" in light of the release of Canon. Defendant then moved before the motion judge for a hearing on the issue.
Defendant argued that after the motion judge had twice denied plaintiff's request to "forward a release and accept the tortfeasor's policy," plaintiff's subsequent release of Canon "[wa]s in violation of Longworth." It further argued that the "sole issue . . . on th[e] limited remand [wa]s whether or not plaintiff fulfilled his contractual obligation as defined by Longworth. . . assuming a valid UIM claim even exist[ed]." After oral argument, the judge determined that
[P]laintiff did not comply with the requirements of Longworth. He may have put [defendant] on notice, but at no time did [defendant] give its consent to force plaintiff to settle with the underlying tortfeasor. . . . [T]here were two motions by plaintiff seeking permission to forward a release . . . to . . . Canon. . . for the policy limits of $25,000, but the Court . . . doesn't have . . . the authority to . . . grant that type of relief. . . .
Plaintiff went ahead and settled the underlying claim without the consent of [defendant], and distributed those funds. This [wa]s in contradiction[] and violation of the provisions of Longworth.

The judge entered an order on November 21 finding that plaintiff "failed to fulfill his contractual obligation as defined by Longworth by failing to obtain permission . . . to settle with the tortfeasor and issue a [r]elase and [this] [wa]s [a] further basis upon which the plaintiff [wa]s not entitled to UIM benefits." Plaintiff's amended notice of appeal also sought our review of this order.

II.
Plaintiff argues that public policy favors a liberal interpretation of insurance contracts to provide coverage; that upon receiving notice of a tentative settlement with the tortfeasor, a UIM carrier is obligated within thirty days to either consent to the settlement and permit plaintiff to forward a release, or pay the settlement amount itself and assume prosecution of plaintiff's complaint; and that plaintiff need only show reasonable efforts to identify the driver of the van and defendant failed to show any appreciable prejudice based upon plaintiff's efforts in this case. In light of the dismissal of his UIM claim with prejudice, plaintiff contends he was free to settle the case with Canon and release her from all claims.
Defendant argues that pursuant to the insurance contract and case law, plaintiff was required to amend his complaint to *1129 protect its subrogation rights, and that his failure to do so properly resulted in dismissal of his UIM claim. Defendant also contends that plaintiff further impaired its subrogation rights by releasing Canon from any further liability after the judge twice specifically denied his request to do so.
We briefly state the standards that guide our review. When reviewing a grant of summary judgment, we employ the same standards used by the motion judge. Atl. Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230, 903 A.2d 513 (App.Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts; we then decide "whether the motion judge's application of the law was correct." Id. at 230-31, 903 A.2d 513 (citation omitted). In conducting our review of the motion record, we accord plaintiff the benefit of all the favorable evidence and inferences. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). "[W]e owe no deference to the" motion judge's conclusion on issues of law. Atl. Mut. Ins. Co., supra, 387 N.J.Super. at 231, 903 A.2d 513.

(a)
A "UIM claim is a contractual one, arising out of the insurance policy issued to plaintiff by his own insurer." Bardis v. First Trenton Ins. Co., 199 N.J. 265, 275, 971 A.2d 1062 (2009). "Although the relationship of the insurer and insured is contractual, the source of the obligation to offer UIM coverage is statutory." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 333, 676 A.2d 1065 (1996). That statutory obligation is found at N.J.S.A. 17:28-1.1(e)(1), which defines the scope of UIM coverage that must be available to insureds at their option:
`[U]nderinsured motorist coverage' means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. . . .
The statutory definition "excludes . . . only one general category: the uninsured motor vehicle." Craig and Pomeroy, N.J. Auto Ins. Law § 27:2 at 460 (2010). There is no dispute that for purposes of summary judgment, plaintiff had demonstrated that Canon's van was "underinsured" as defined by the statute and by defendant's policy.[5]
*1130 It is axiomatic that a UIM carrier has subrogation rights regarding benefits it pays to its insureds. Craig and Pomeroy, supra, § 28:3 at 498; Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 169-70, 652 A.2d 162 (1995); Longworth, supra, 223 N.J.Super. at 183, 538 A.2d 414. "[T]he injured party must preserve [the] UIM carrier's subrogation rights." Connelly v. McVeigh, 374 N.J.Super. 159, 169, 863 A.2d 1085 (App.Div.2005). The contract of insurance in this case specifically recognized defendant's subrogation rights:
If any person . . . to . . . whom [defendant] make[s] payment . . . has rights to recover damages from another, those rights are transferred to [defendant]. That person . . . must do everything necessary to secure [defendant's] rights and must do nothing after [the] accident or loss to impair them.
[Quotations marks omitted.]
Protection of these subrogation rights is accomplished in the first instance through the notification obligations imposed on the insured under the policy.
Initially, it is clear that plaintiff complied with the literal requirements of the policy regarding notification, both as to the accident and his potential settlement with State Farm. Under the terms of the policy's UM/UIM endorsement, a party making a claim must
a. Promptly notify the police if a hit-and-run driver [wa]s involved; and
b. Promptly send [defendant] copies of the legal papers if a suit [wa]s brought.
c. . . . [P]romptly notify [defendant], in writing, of a tentative settlement between the insured and the insurer of an underinsured motor vehicle and allow [defendant] to advance payment to that insured in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve [defendant's] rights against the insurer, owner or operator of such underinsured motor vehicle.
[Quotations marks omitted.]
Defendant does not claim that plaintiff failed to comply with these provisions. Rather, it argues, as it did below, that plaintiff was required to do more to "secure [defendant's] rights" and not "impair them." It contends that plaintiff was obligated "to file suit against the three identified potential tortfeasors" within two years of the date of the accident, see Vassas, supra, 139 N.J. at 169, 652 A.2d 162 ("The limitations period for a subrogation action begins to run at the same time as the limitations period for the underlying action. . . ."), "serve them, depose them, and obtain their insurance information. . . ."[6]

(b)
In Longworth, supra, we defined the insured's and insurer's obligations regarding the possible settlement of claims against a third-party tortfeasor given the tension that existed between "the subrogation clause" and "the consent-to-settle clause" contained in most UIM policies at the time. 223 N.J.Super. at 183, 538 A.2d 414. By refusing to permit the insured to settle his claim with the tortfeasor, we noted that UIM carriers placed their insureds in a "limbo" that "utterly frustrate[d] the legislative purpose of providing maximum and expeditious protection to the innocent victims of financially irresponsible motorists." Id. at 184, 538 A.2d 414. As a result, we held:
[A]n insured receiving an acceptable settlement offer from the tortfeasor should notify his UIM carrier. The carrier may then promptly offer its insured that sum in exchange for assignment to it by *1131 the insured of the claim against the tortfeasor. While promptness is to be ultimately determined by the circumstances, 30 days should be regarded as the presumptive time period if the insured notices his carrier prior to assignment of a trial date. In any event, an insured who has not received a response from his carrier and who is in doubt as to whether acceptance of the tortfeasor's offer will impair his UIM rights may seek an immediate declaratory ruling from the trial court on order to show cause on such notice as is consistent with the circumstances. We further hold that UIM carriers may, if they choose, honor demands from their insureds to proceed to arbitration of the UIM claim prior to disposition of the claim against the tortfeasor.
[Id. at 194-95, 538 A.2d 414.]
The Supreme Court endorsed that procedure in Vassas, supra, 139 N.J. at 171, 652 A.2d 162.
As we see it, plaintiff fully complied with Longworth's procedures. He notified defendant that he had reached a tentative settlement with State Farm; when defendant refused to make payment and assume prosecution of the claim against the potential tortfeasors, and also refused to consent to releasing Canon, plaintiff sought declaratory relief. Defendant's response was, likewise, permissible under Longworth. It chose to argue that it need not approve the settlement or assume litigation of the case because plaintiff was not entitled to UIM benefits having already compromised defendant's subrogation rights.
Clearly, as it pertains to Canon, this argument was illusory. In this case, defendant was a named party in the litigation; it had already asserted a crossclaim, had participated in discovery, and had deposed Canon. Moreover, the fact that Canon had been granted summary judgment, despite defendant's decision not to oppose the motion, was of no moment, since the judge vacated that order. Thus, we fail to see how defendant's subrogation rights against Canon were in anyway compromised.
Defendant's essential argument, however, is that plaintiff compromised any subrogation rights it may have had against some other person, i.e., the driver of the Canon van. This assumes two necessary conclusions both of which defendant bore the burden of demonstrating in order to prevail on summary judgment: first, that plaintiff had an obligation to amend his complaint to name any or all of the people identified in discovery, that plaintiff's obligation somehow trumped defendant's own ability to proceed against these individuals either by amending the complaint itself, or by amending its crossclaim, already extant, to accomplish the same end, and that plaintiff had not made reasonable efforts to identify the driver of the van; and second, that plaintiff's failure to amend the complaint in fact prejudiced defendant's subrogation rights.
Defendant has not directed our attention to any case that places an obligation upon plaintiff to amend his complaint under these circumstances. Longworth dealt with the more usual situation in which the UIM carrier is not a named litigant in the underlying tort action. Longworth's remedy in that circumstance was to permit the UIM carrier, upon notice of the proposed settlement and after evaluation of plaintiff's claim, to intervene in the tort case and assume prosecution of the action itself. Supra, 223 N.J.Super. at 186, 538 A.2d 414. Here, defendant had no need to intervene in the case because it was already in the litigation as a named party and had participated in discovery. Therefore, defendant's argument that Longworth required plaintiff *1132 to amend his complaint is entirely misplaced under the facts presented.
Plaintiff contends that our holding in Hreshko v. Harleysville Insurance Co., 337 N.J.Super. 104, 111, 766 A.2d 776 (App.Div.2001), supports his assertion that he was not required to amend his complaint or that his failure to do so impaired defendant's subrogation rights. Hreshko, supra, involved a UIM claim by the driver of the first car rear-ended in a three car collision. 337 N.J.Super. at 106, 766 A.2d 776. The plaintiff filed suit only against the driver of the car that rear-ended him, but not the driver of the third car in the chain collision. Id. at 108-09, 766 A.2d 776. The plaintiff's UIM insurer argued that failure to join the driver of the third vehicle prejudiced its subrogation rights, and that without seeking compensation from the third driver, plaintiff was ineligible for UIM benefits. Id. at 108, 766 A.2d 776. We concluded that there was no requirement "to join all persons involved in the accident in the third-party suit, irrespective of fault, in order to protect the insurer's subrogation rights." Id. at 111, 766 A.2d 776.
Our focus in Hreshko, however, was on whether the plaintiff's failure to name the third driver actually prejudiced the UIM carrier's subrogation rights, which we discuss below. Moreover, as defendant points out, Hreshko involved a situation in which there were multiple potential tortfeasors with the implication of multiple insurance policies being involved; in this case, there was only one culpable driver.
Several other cases have examined the obligation of an insured to identify potential tortfeasors in the context of UM insurance coverage. In Scheckel v. State Farm Mutual Automobile Insurance Co., 316 N.J.Super. 326, 327-29, 720 A.2d 396 (App. Div.1998), the plaintiff was struck by a car while riding his bicycle, and because he believed he suffered no injuries, failed to obtain the identity of the driver. When his injuries worsened, he filed a police report and made a claim under his UM coverage, which the defendant insurer denied, alleging a breach of the insurance contract's notification obligations. Id. at 329-30, 720 A.2d 396.
Although the plaintiff claimed to have made efforts to identify the driver at a later time, the trial court granted summary judgment determining that the plaintiff's failure had severely prejudiced the defendant. Id. at 330, 720 A.2d 396. We held that
an insured claiming coverage under a UM endorsement may be deemed to have breached the policy if he or she fails to demonstrate that reasonable efforts were undertaken to ascertain the identity of the uninsured vehicle. Whether actions taken to ascertain identification constitute reasonable efforts depends on the circumstances of the individual case. On this issue, the insured bears the burden of proof. However, uninsured motorist provisions are generally interpreted broadly to afford the injured claimant recovery.
[Id. at 332, 720 A.2d 396 (quotations and citations omitted).]
In reversing summary judgment, "we conclude[d] [that] the judge erred in rejecting as irrelevant plaintiff's claim that he acted reasonably, and in impliedly concluding that a rational fact-finder could not draw conflicting inferences from the facts presented." Id. at 334, 720 A.2d 396. Accord Norman v. Selective Ins. Co., 249 N.J.Super. 104, 112-13, 592 A.2d 24 (App.Div. 1991) (reversing summary judgment under similar facts and remanding to determine if the plaintiff made reasonable efforts to obtain the identity of the other driver involved in the collision).
*1133 Turning to the case at hand, it is clear that when defendant moved for summary judgment, it did so on the strength of what it perceived as plaintiff's legal obligation to amend the complaint to name Vasquez and/or the Palacioses, and/or Marino as parties. The only factual support for this claim was Canon's deposition testimony that her husband and Mr. Palacios routinely had access to the keys to the van. Canon denied ever knowing Marino until two months after the accident, when they met and she sold him the van in question.
In opposing the motion, plaintiff relied upon what was already developed in the record, specifically that the police had investigated the accident, and had not filed charges against any individual; that Vasquez was in Florida with Canon on the date of the accident; and that there was no evidence to support a claim against the Palacioses.
When plaintiff moved for reconsideration, however, he provided more detailed information on his efforts to investigate the accident. This included a certification from Police Officer Stephen Butterbrodt of the Port Authority Police Department who had investigated the accident and determined that from the available information, there was no basis to charge any of the individuals as the driver of the van that left the scene of the accident; and a certification from an investigator detailing his unsuccessful efforts to locate Vasquez, Marino, and the Palacioses.[7]
In initially granting summary judgment, the judge concluded plaintiff "ha[d] the obligation to determine who the driver was. That was not done." He further concluded, "That impaired the rights of [defendant] under the rights of subrogation." In denying the motion for reconsideration, the judge simply concluded that plaintiff was "trying to supplement ... and reargue ... by giving [him] additional facts. ..." He nonetheless decided that plaintiff had "given [him] nothing to give [him] a factual or legal basis to reconsider [his] decision. ..."
We believe that the judge erred by applying the wrong legal standard regarding plaintiff's obligations. The question to be decided was whether plaintiff had made reasonable efforts to identify the driver of the van, not whether he had failed "to determine who the driver was." Whether plaintiff in fact had made reasonable efforts was disputed. Thus, to have prevailed on summary judgment, defendant was required to demonstrate that no "rational factfinder [could] resolve the alleged disputed issue in" plaintiff's favor. Brill, supra, 142 N.J. at 540, 666 A.2d 146.
In his original opposition to defendant's motion, plaintiff provided some general details regarding the investigation. Additionally, when the motion for reconsideration was made, plaintiff provided substantially more information that for purposes of opposing summary judgment demonstrated he had made reasonable efforts to ascertain who was driving the van.
In short, the question of whether plaintiff had made reasonable efforts to identify the driver of the van should not have been decided on summary judgment, and therefore plaintiff's complaint was erroneously dismissed with prejudice. See Scheckel, supra, 316 N.J.Super. at 334-35, 720 A.2d 396. We therefore reverse the grant of summary judgment, and remand the matter for further proceedings at which plaintiff *1134 should be accorded the opportunity to demonstrate whether his efforts to ascertain who was driving the van on the date of the accident were reasonable.
In this regard, the judge is further obligated to consider the specific, idiosyncratic procedural aspects we alluded to above, i.e., defendant's intimate involvement with this litigation from its inception. As noted, defendant deposed Canon, and was aware of the identity of Vasquez, the Palacioses, and Marino well in advance of filing its motion for summary judgment. In other words, unlike a situation in which a UIM claimant waits until very close to the trial date to notify his carrier of its potential claim and/or settlement with a tortfeasor, Longworth, supra, 223 N.J.Super. at 190, 538 A.2d 414, defendant in this case, was fully aware of the factual predicates of the claim and indeed had asserted a claim itself against Canon and "John Doe 1-3" in its pleading. The impact, if any, of these facts upon the determination of whether plaintiff made reasonable efforts shall be for the judge to decide.
A second inquiry needed to be made before plaintiff's complaint could be dismissed on summary judgment; thus, reversal is warranted for another reason. We have noted that actual prejudice to subrogation rights is necessary to deny a claim for UIM benefits based upon an alleged impairment of those rights, even when the UIM claimant has not strictly complied with Longworth. In Breitenbach v. Motor Club of America Insurance Co., 295 N.J.Super. 328, 330-31, 685 A.2d 36 (App.Div.1996), the plaintiff sent a Longworth notice to the defendant UIM carrier, the defendant asked for more information which was supplied, and then the plaintiff signed a release and settled with the tortfeasor for his policy limits without permission from his UIM carrier. The defendant contended that it was entitled to an irrebuttable presumption of prejudice if its insured did not obtain its consent to settle. Id. at 332, 685 A.2d 36. We rejected the argument that plaintiff was required to seek declaratory relief before settlement, and noted, "[b]y not waiting the thirty day period, the insured takes a risk and must demonstrate either consent or waiver by the carrier or a lack of prejudice to the carrier if the carrier, within that period, gives notice of its election to pay the settlement amount." Id. at 334, 685 A.2d 36 (emphasis added).
In CNA Insurance Cos. v. Cave, 332 N.J.Super. 185, 187, 753 A.2d 141 (App. Div.), certif. denied, 165 N.J. 678, 762 A.2d 659 (2000), the defendant pursued a UIM claim under his policy when he was badly injured as a passenger in a car whose driver ran a stop sign and collided with another car. The defendant's car was underinsured, but the other car carried substantial insurance. See id. at 188, 753 A.2d 141. The insurer of the other car, whose driver likely was not negligent, settled with the defendant for $5000 immediately before trial, and the defendant did not notify his carrier before executing the release. Id. at 189, 753 A.2d 141.
Rejecting the claim that the UIM insurer was prejudiced, we noted that only an actual tortfeasor's insurance should be considered "available" in determining eligibility for UIM coverage. Id. at 192, 753 A.2d 141. "[A] plaintiff who violates his duty to his UIM carrier does so at his own risk. But the risk he incurs is the inability to prove that the carrier was not prejudiced by the plaintiff's destruction of the carrier's subrogation rights." Id. at 193, 753 A.2d 141. We required the carrier to participate in UIM arbitration because if the settling driver was not negligent, and thus was not a tortfeasor, then the UIM carrier would have suffered no prejudice from the Longworth violation. Ibid.
*1135 Although the issue in Hreshko supra, arose in the context of the plaintiff's entitlement to UIM benefits in the first instance, i.e., whether the total amount of available insurance was less than the UIM coverage, the lack of prejudice to the UIM carrier was the touchstone of our decision. As noted above, we rejected the carrier's claim that the plaintiff was obligated to initiate suit against a driver he believed was not at fault. 337 N.J.Super. at 111, 766 A.2d 776. We further noted that in the UIM arbitration, the arbitrators were free to assess all drivers' percentages of fault. Id. at 112, 766 A.2d 776. If the unnamed driver was not at fault after arbitration, then there would be no prejudice to the UIM carrier. Ibid. If that driver was found to be at fault, and not underinsured, then plaintiff would "suffer[] the consequences of failing to join him in the third-party action." Ibid. Even if the unnamed driver was found to be at fault, and based upon percentage allocation his insurance was insufficient, the carrier still would not be prejudiced because it would be entitled to a credit for the full amount of his policy. Ibid.
In this case, plaintiff has argued that defendant has suffered no prejudice because none of the unnamed individuals was the driver of the van at the time of the accident. We presume that defendant's assertion of prejudice is based upon the possibility that one of the unnamed parties was the actual tortfeasor, and Canon was not.
We need not decide the question of whether defendant is in fact prejudiced in any possible future arbitration by plaintiff's failure to name Vasquez, the Palacioses, or Marino.[8] We only conclude that the grant of summary judgment was inappropriate, because defendant failed to demonstrate that, as a matter of law, it was prejudiced by plaintiff's failure to name one or more of the other individuals as the driver of the van.
At the remand hearing, the judge must consider whether plaintiff has demonstrated that defendant's rights are not prejudiced by his failure to name someone other than Canon. Here, too, the judge must consider the fact that defendant had the opportunity to add these parties to the case well before the statute of limitations expired and did not, relying instead upon its theory that plaintiff alone was obligated to amend his complaint.
Lastly, we address the issue posed by plaintiff's decision to accept the settlement offered by Canon and release her from any further claims. The judge determined this was an additional reason for concluding defendant's subrogation rights were impaired.
It is undoubtedly true that defendant can no longer seek subrogation from Canon, as a result of the release, if indeed plaintiff ultimately secures a UIM arbitration award in the first instance. Presumably, after his UIM complaint was dismissed, plaintiff could have needlessly litigated his claim against Canon and secured *1136 a judgment, then taken this appeal. That certainly would have preserved defendant's subrogation rights.
However, we can think of no principled reason why defendant, having sought and secured summary judgment dismissing plaintiff's complaint with prejudice, should still be in control of plaintiff's only remaining extant claim. That was precisely why we adopted Longworth's procedure in the first instance. Here, defendant made its choice to seek summary judgment, rather than consent to the settlement, assume the prosecution of the third-party action, or arbitrate plaintiff's claim. See Longworth, supra, 223 N.J.Super. at 195, 538 A.2d 414.
Furthermore, defendant took no position on the issue when plaintiff sought this relief from the court as part of his motion for reconsideration. Notably, it did not argue that plaintiff was required to litigate his claim against Canon. As a result, plaintiff's decision to release Canon after his UIM complaint was dismissed with prejudice is irrelevant to the issues presented on appeal.
In sum, we reverse because summary judgment dismissing plaintiff's complaint with prejudice was improvidently granted, and we remand the matter to the trial judge for further proceedings. On remand, the judge is to consider only two issues in deciding whether plaintiff impaired defendant's subrogation rights: first, whether plaintiff made reasonable efforts to identify the driver of the van, particularly in light of the procedural posture of the case and defendant's involvement with the litigation from its inception; second, whether plaintiff's failure to amend his complaint to add any or all of the unnamed parties irreparably prejudiced defendant by impairing its subrogation rights. We leave the conduct of the remand hearing to the motion judge's sound discretion.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] All references to "plaintiff" in the singular are to Anthony Tonic; the claims of his wife, Yvonne Tonic, are solely derivative.
[2] The record fails to reveal what the UIM limits of defendant's policy were, though it is apparently undisputed that based upon those limits the Canon van was "underinsured" pursuant to the statutory definition and the terms of the policy.
[3] This was apparently the second time Canon was deposed, though it was the first time defendant participated.
[4] Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div.1988).
[5] Defendant has not, for example, sought our review of the judge's interlocutory order of October 19, 2007, that granted declaratory relief and found that "plaintiff [wa]s . . . eligible for [a] UIM claim. . . ."
[6] Defendant does not identify who the "three identified potential tortfeasors" were.
[7] Both certifications are dated in January 2008, and were presumably prepared after summary judgment was granted to defendant. However, both refer to events that took place during 2007 and, on their face, detail efforts that plaintiff made prior to the grant of summary judgment.
[8] We note, for example, that because plaintiff failed to name any other individuals as the driver of the car, his UIM claim is premised upon the legal liability of Canon. See Krohn v. N.J. Full Ins. Underwriters Ass'n, 316 N.J.Super. 477, 484, 720 A.2d 640 (App.Div. 1998), certif. denied, 158 N.J. 74, 726 A.2d 937 (1999) ("`Thus, the tortious act of a third party [and resulting damages are] predicate[s] for . . . recovery of uninsured . . . motorist proceeds.'") (quoting Midland Ins. Co. v. Colatrella, 102 N.J. 612, 617, 510 A.2d 30 (1986)). The resolution of that issue necessarily implicates questions regarding the unidentified driver's permissive use of the van, and, given Canon's New York residence, potential choice of law questions. We mention these in passing without necessarily deciding their applicability.